**CONTEC CORPORATION, Plaintiff–Counter–Defendant–Appellee,**

v.

**REMOTE SOLUTION CO., LTD., Defendant–Counterclaimant–Appellant.**

**Docket No. 04–0382–CV.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 2004.

Decided Feb. 14, 2005.

David L. Finger, Wilmington, DE (Finger & Slanina, LLC; and Madeline H. Kibrick Kauffman, Nolan & Heller, LLP, Albany, NY, of counsel), for Appellant.

Kenneth L. Stein, New York, N.Y. (Jones Day, of counsel), for Appellee.

Before OAKES, JACOBS, and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge.

This case originated when Contec Corporation filed suit to compel Remote Solution Co., Ltd. ("Remote Solution") to arbitrate an indemnification dispute. Remote Solution argued that it could not be compelled to participate in arbitration because Contec Corporation was a non-signatory to the arbitration agreement Remote Solution had signed with Contec L.P. in 1999. The United States District Court for the Northern District of New York, David N. Hurd, *Judge,* dismissed the suit, finding that whether a valid arbitration agreement existed between Remote Solution and Contec Corporation was an issue to be decided by the arbitrator. We agree with the district court that Remote Solution is compelled under the agreement it signed with Contec L.P. to arbitrate the question of arbitration with Contec Corporation. Accordingly, we affirm.

## BACKGROUND

In 1999, Contec L.P. and Hango Electronics, a Korean electronics company that subsequently changed its name to Remote Solution, entered into an agreement for the manufacturing and purchase of remote control devices ("the 1999 Agreement"). Later in 1999, Contec L.P. was converted to Contec LLC and then, in 2001, merged with Contec Corporation, leaving Contec Corporation as the surviving entity. These changes in corporate form did not alter Contec's address or ownership and allegedly did not impact its business relationship with Remote Solution.

In 2000 and 2002, Contec Corporation was sued for alleged patent infringement. Under an indemnification provision of the 1999 Agreement, Remote Solution was required to defend Contec L.P. in any patent infringement suit and pay any and all costs or damages awarded. Remote Solution did not make any indemnification payments to Contec Corporation for costs Contec Corporation incurred in connection with the suit. Contec Corporation therefore withheld payment on a shipment of remote control units as a setoff against amounts it believed it was owed by Remote Solution.

In June 2003, Remote Solution filed suit against Contec Corporation in Korea. Relying on Paragraph 19 of the 1999 Agreement, which required that all disputes arising under the agreement be arbitrated, Contec Corporation filed a demand for arbitration with the American Arbitration Association. Additionally, it filed suit in the district court seeking to compel arbitration and an order to dismiss or stay Remote Solution's lawsuit in Korea.

In the district court proceedings, Remote Solution contended that Contec Corporation was not a signatory to the 1999 Agreement and was therefore barred from seeking its enforcement. In response, Contec Corporation argued that arbitration, not the court, was the proper forum for determining whether a valid arbitration agreement existed between itself and Remote Solution.

In December 2003, the district court dismissed the suit, finding that "all claims set forth in the complaint and counterclaim are subject to arbitration." The district court explained its reasoning as follows:

[T]he threshold question is whether Contec Corp.'s purported right to enforce the agreement falls within the scope of the arbitration clause. The agreement clearly provides that any dispute arising under the agreement will be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The Commercial Arbitration Rules provide that issues of jurisdiction, including objections regarding the scope or validity of the arbitration agreement, are sub-

ject to arbitration. This is the agreement that Remote Solution ... agreed to.

This appeal followed.

## DISCUSSION

■ Our review of "whether the issue of arbitrability is for the court or for the arbitrator" is *de novo.* *Bell v. Cendant Corp.,* 293 F.3d 563, 565–66 (2d Cir.2002); *see also Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir.2003).

■ The 1999 Agreement, as a contract involving international commerce, is governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1, 2 (2004); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 249 (2d Cir.1991) (noting that the Supreme Court held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), that the FAA "applies in federal court to diversity suits which relate to contracts involving interstate or international commerce"). Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Acknowledging this presumption, we have held that "the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell,* 293 F.3d at 566 (emphasis in original) (internal quotations omitted).[1]

The arbitration clause at issue here appears in paragraph 19 of the 1999 Agreement and provides:

> In the event of any controversy arising with respect to this Agreement, both parties shall use its best efforts to resolve the controversy. In the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") or any organization that is the successor thereto ....

Rule 7 of the AAA Commercial Arbitration Rules states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R–7(a).

■ We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See Shaw Group,* 322 F.3d at 122; *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir.1996). There can be no doubt that the 1999 Agreement bound its signatory Remote Solution to arbitrate any disputes with the Agreement's other signatory, namely, Contec L.P. If Contec remained in its original corporate form, Remote Solution would be compelled to arbitrate the indemnification dispute at the heart of this case. Contec L.P., however, has become Contec Corporation. The question, therefore, is wheth-

---

1. The 1999 Agreement is governed by New York law, which follows the same standard as federal law with respect to who determines arbitrability: generally, it is a question for the court unless there is "a 'clear and unmistak- able' agreement to arbitrate arbitrability." *Shaw Group,* 322 F.3d at 121 (quoting *Smith Barney Shearson Inc. v. Sacharow,* 91 N.Y.2d 39, 45–46, 666 N.Y.S.2d 990, 993, 689 N.E.2d 884 (1997)).

er Contec Corporation's ability as a non-signatory to enforce the arbitration clause is an issue pertaining to the "existence, scope or validity of the arbitration agreement" between Remote Solution and Contec L.P.

Remote Solution argues that it cannot be compelled to arbitrate with a stranger to the 1999 Agreement because the contractual language is effective only between the contracting parties. It contends that the 1999 Agreement included both a prohibition on the assignment of rights under the Agreement and an exclusion of third party rights, and that, therefore, there is no contractual evidence of Remote Solution's intent to grant third parties the right to seek arbitration. According to Remote Solution, Contec Corporation's rights under the 1999 Agreement, if any, fall outside the arbitration clause and thus cannot be an issue pertaining to the "existence, scope or validity of the arbitration agreement."

■ As an initial matter, we recognize that just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory. In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement. *See First Options*, 514 U.S. at 944–45, 115 S.Ct. 1920 (discussing the necessity of threshold determination by courts before referring issues of arbitrability to arbitrators). A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, where we held that the signatory to an arbitration agreement "is estopped from avoiding arbitration with a non-signatory 'when the issues the non-signatory is seeking to resolve in arbitra-

tion are intertwined with the agreement that the estopped party has signed.'" 271 F.3d 403, 404 (2d Cir.2001)(quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 98 (2d Cir.1999)). In *Choctaw*, we summarized the factors laid out in *Smith/Enron* as "the relationship among the parties, the contracts they signed (or did not), and the issues that ha[ve] arisen." *Id.* at 406.

■ In the present case, neither we nor the district court must reach the question whether Remote Solution is estopped from avoiding arbitration with Contec Corporation because, under the 1999 Agreement, the circumstances indicate that arbitration of the issue of arbitrability is appropriate. First, there is or was an undisputed relationship between each corporate form of Contec and Remote Solution. Secondly, Remote Solution signed the 1999 Agreement. Finally, the dispute at issue arose because the parties apparently continued to conduct themselves as subject to the 1999 Agreement regardless of change in corporate form. These factors demonstrate that a sufficient relationship existed between Contec Corporation and Remote Solution to permit Contec Corporation to compel arbitration even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because Contec Corporation cannot claim rights under the 1999 Agreement.

■ Having determined that a sufficient relationship exists between the parties, we must now address the more precise question presented here: whether a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration. Although our circuit has not previously considered this question, we are not without guidance in federal law.

In *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir.1989),[2] the First Circuit decided a case virtually indistinguishable from this one. The court considered whether Apollo, a signatory to an arbitration agreement with another company called Dico, could be compelled to arbitrate by Dico's trustees in bankruptcy, who were non-signatories to the agreement. As in the instant case, the agreement between Apollo and Dico contained a non-assignment clause. Rejecting the argument that Apollo could not be compelled to arbitrate because there was no agreement between it and the defendants, the court held:

> The relevant agreement here is the one between Apollo and Dico. The defendants claim that Dico's right to compel arbitration under that agreement has been assigned to them. . . . Whether the right to compel arbitration . . . was validly assigned to the defendants and whether it can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement.

*Id.* at 473. Similarly, the relevant agreement here is the one Remote Solution signed with Contec L.P., in which Remote Solution agreed to submit all disputes to arbitration. Under the reasoning of *Apollo*, whether the arbitration rights under the 1999 Agreement were validly assigned by Contec L.P. to Contec Corporation is an issue that pertains directly to the continued "existence, scope or validity" of the Agreement. As such, it is within the jurisdiction of the arbitrator pursuant to AAA Rule R–7(a) as incorporated into the 1999 Agreement.

In direct contrast to the holding in *Apollo*, the Federal Circuit held recently in a very similar case that "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1358 (Fed.Cir.2004). In reaching this conclusion, the Federal Circuit did not examine *Apollo*, but instead relied on Supreme Court cases that either did not address whether there was clear and unmistakable evidence of the parties' intent to submit arbitrability to an arbitrator, *id.* at 1357 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (holding that applicability of a National Association of Securities Dealers time limit provision is not the type of "gateway dispute" presumptively decided by the court)); *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (holding that it was court's duty to determine whether layoff provision was expressly excluded from labor agreement arbitration clause), or found that such clear and unmistakable evidence was absent; *id.* (citing *First Options*, 514 U.S. at 944–47, 115 S.Ct. 1920; *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). In our view, these cases are not determinative when analyzing the factual situation presented by *Microchip*, *Apollo*, and the instant case, where incorporation of arbitration rules giving jurisdiction to the arbitrator provides clear and unmistakable evidence of the parties' intent to arbitrate issues of arbitrability. Moreover, in *Microchip*, the party that urged arbitration was the signatory to the arbitration agreement and the party that sought to avoid arbitration was

---

**2.** We have previously cited *Apollo* with approval for the proposition that parties who contract for arbitration in accordance with arbitration rules such as the AAA Commercial Arbitration Rules have "thereby agreed to submit questions of arbitrability to the arbitrator." *Shaw Group*, 322 F.3d at 122–23.

the non-signatory. *Id.* at 1353. In this case, as in *Apollo,* the party seeking to avoid arbitration was a signatory to the arbitration agreement. Although the *Microchip* court found this distinction irrelevant, *id.* at 1358, we find it an important indicator of Remote Solution's expectation and intent when binding itself to the 1999 Agreement. *See Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 52 (2d Cir.2004) (recognizing the "principle [that] an arbitration clause is binding ... on those parties which have entered into a contractual agreement to submit to arbitration").

After review of *Apollo* and *Microchip,* we find the reasoning of *Apollo* to be more persuasive and explicitly adopt it here. In *Apollo,* the court recognized that the question of arbitrability would ordinarily be subject to judicial determination rather than arbitration. *Id.* (citing *Am. Safety Equip. Corp. v. J.P. Maguire & Co.,* 391 F.2d 821, 828–29 (2d Cir.1968)). However, because Apollo, like Remote Solution, "agreed to be bound" by provisions that "clearly and unmistakably allow the arbitrator to determine her own jurisdiction" over an agreement to arbitrate "whose continued existence and validity is being questioned," it is the province of the arbitrator to "decide whether a valid arbitration agreement exists." *Id.* We therefore conclude that as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, Remote Solution cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability.

We agree with the district court that Contec Corporation's purported right to enforce the 1999 Agreement is a matter of the Agreement's continued existence, validity and scope, and is therefore subject to arbitration under the terms of the arbitration clause. Accordingly, we hold that Re-

mote Solution is compelled under the 1999 Agreement to arbitrate the question of arbitrability with Contec Corporation.

### CONCLUSION

For the foregoing reasons, the decision of the district court to dismiss this case in favor of arbitration is affirmed.