445 F.3d 121
 ALLIANCE BERNSTEIN INVESTMENT RESEARCH AND MANAGEMENT, INC., Alliance Capital Management, LP, and Alliance Capital Management Corp., Plaintiffs-Appellants,
v.
Charles SCHAFFRAN, Defendant-Appellee.
Docket No. 05-4437-CV.
 United States Court of Appeals, Second Circuit.
 Argued: February 2, 2006.
 Decided: April 12, 2006.
 
 1
 Joseph Baumgarten, Proskauer Rose LLP, New York, New York (Tracey Levy, on the brief), for Plaintiffs-Appellants.
 
 
 2
 Lee Bantle, Bantle & Levy LLP, New York, New York (Robert Levy, on the brief), for Defendant-Appellee.
 
 
 3
 Before: POOLER and B.D. PARKER, Circuit Judges, and CHIN, District Judge.*
 
 
 4
 CHIN, District Judge.
 
 
 5
 For decades, employers and employees have been litigating the issue of the arbitrability of employment discrimination claims. When the issue first arose, employers sought to require employees to arbitrate and employees resisted, preferring to take their claims to court. In this case, the roles are reversed, as the employer seeks to compel an employee to litigate in court, while the employee prefers to pursue his claims in arbitration.
 
 
 6
 As a consequence of the parties' dispute over the forum, the employee's claims — which were submitted for arbitration in September 2004 — are nowhere near resolution. The parties have already expended much time and effort, little of it on the merits. Indeed, the issue before this Court is not even whether the claims must be arbitrated, but rather it is the preliminary issue of who will decide the arbitrability question.
 
 
 7
 The District Court held that the issue of arbitrability is to be decided by an arbitration panel rather than the court. For the reasons that follow, we agree.
 
 
 STATEMENT OF THE CASE
 
 A. The Facts
 
 8
 The facts are undisputed, except as otherwise stated, and may be summarized as follows: For approximately ten years ending in November 2003, defendant-appellee Charles Schaffran was employed by plaintiffs-appellants Alliance Bernstein Investment Research and Management, Inc., Alliance Capital Management, LP (the "LP"), and Alliance Capital Management Corp. (collectively, "Alliance")[1] in the hedge fund business. On or about November 14, 2003, Schaffran's employment with Alliance terminated. Schaffran contends that he was wrongly discharged while Alliance contends that Schaffran resigned.
 
 
 9
 Alliance is a member of the National Association of Securities Dealers (the "NASD"). While he was employed at Alliance, Schaffran was a "person associated with a member" within the meaning of the applicable NASD rules and by-laws. When he began his employment with Alliance, Schaffran executed a Form U-4, "Uniform Application for Securities Industry Registration or Transfer." The Form U-4 contained a mandatory arbitration clause, which provided:
 
 
 10
 I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time . . . .
 
 
 11
 In September 2004, approximately ten months after his employment ended, Schaffran commenced arbitration proceedings against Alliance by filing a statement of claim with the NASD. Schaffran alleged that Alliance had discharged him because he cooperated with the Securities and Exchange Commission, the New York State Attorney General's Office, and private attorneys representing customers of Alliance in their respective investigations into alleged wrongdoing by Alliance officers. Schaffran alleged that Alliance violated § 806(a) of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, by terminating his employment. Schaffran also asserted claims under New York law.
 
 
 12
 In November 2004, Alliance requested that Schaffran withdraw his SOX claim and refile it in District Court. Schaffran refused.
 
 B. The NASD Code
 
 13
 The NASD has promulgated a Code of Arbitration Procedure (the "Code") applicable to NASD arbitrations. Several rules in the Code are applicable to this case.
 
 
 14
 Rule IM-10100(a) provides that when members of the NASD and persons associated with members "fail to submit a dispute for arbitration under the [Code] as required by that Code," they engage in "conduct inconsistent with just and equitable principles of trade" and violate the Code.
 
 
 15
 Rule 10101 provides that the Code "is prescribed and adopted . . . for the arbitration of any dispute, claim, or controversy. . . arising out of the employment or termination of employment of associated person(s) with any member."
 
 
 16
 Rule 10201(a) sets forth the matters for which arbitration is required. It provides, in pertinent part:
 
 
 17
 . . . Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons . . . or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of . . . a member against a person associated with a member or a person associated with a member against a member.
 
 
 18
 Paragraph (b) of Rule 10201 provides an exception to mandatory arbitration for employment discrimination claims:
 
 
 19
 A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.
 
 
 20
 The exception was added by an amendment that became effective on January 1, 1999. See Desiderio v. NASD, 191 F.3d 198, 201 (2d Cir.1999).
 
 
 21
 Rule 10324 governs the interpretation of the provisions of the Code and provides:
 
 
 22
 The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.
 
 C. Proceedings Below
 
 23
 Alliance commenced this action below by filing a complaint on November 12, 2004 seeking a declaratory judgment that it was not required to arbitrate Schaffran's SOX claims before the NASD. On December 20, 2004, Schaffran moved to dismiss the complaint and to compel arbitration. On January 10, 2005, Alliance opposed the motion and cross-moved for summary judgment.
 
 
 24
 By order docketed March 14, 2005, the District Court denied Schaffran's motion to dismiss and compel arbitration and granted the declaratory relief sought by Alliance, holding that Alliance was not required to arbitrate the SOX claims.
 
 
 25
 Schaffran moved for reconsideration and reargument or to alter or amend the judgment. By order dated July 14, 2005, and entered on July 18, 2005, the District Court granted the motion, holding that the issue of arbitrability should be decided by an arbitrator. The District Court withdrew its March 14, 2005, decision and dismissed the complaint. Although it did not explicitly say that it was doing so, the District Court effectively granted Schaffran's initial motion to dismiss. Alliance filed a timely notice of appeal on August 15, 2005. By order filed August 24, 2005, the District Court stayed the arbitration proceedings pending appeal.
 
 
 DISCUSSION
 
 
 26
 The crux of the dispute over arbitrability is whether a SOX claim is an "employment discrimination" claim within the meaning of Rule 10201(b) of the Code. If it is, then the claim is excepted from the mandatory arbitration provisions of the Code and Alliance can decline to arbitrate. If it is not, then the claim does not fit within the exception and Alliance has no choice but to arbitrate. The threshold question, however, and the only issue before this Court, is who decides arbitrability, i.e., whether a court or an arbitration panel decides whether a SOX claim falls within the exception set forth in Rule 10201(b).
 
 A. Applicable Law
 1. Standard of Review
 
 27
 Because the District Court resolved the question of arbitrability on motions without making factual findings, we review its decision de novo. See Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir.2005) (district court's decision on arbitrability is reviewed de novo); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir.2004) (same); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (district court's decision to confirm arbitration award on ground parties agreed to submit dispute to arbitration is reviewed for clear error as to factual findings and de novo as to conclusions of law); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir.2003) (if issues of fact exist as to making of arbitration agreement, trial is necessary).
 
 2. Choice of Law
 
 28
 Both federal and state law apply. First, the Federal Arbitration Act (the "FAA") creates a "body of federal substantive law of arbitrability" applicable to arbitration agreements, such as the one at issue here, affecting interstate commerce. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Paine-Webber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996). Second, New York contracts law applies, as courts generally look to state law for guidance as they seek to ascertain the parties' intent. See First Options, 514 U.S. at 944, 115 S.Ct. 1920; John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir.2001) (applying New York contracts principles in deciding arbitrability). Here, it is appropriate to look to New York law as Schaffran was employed in New York and filed the arbitration proceedings with the NASD in New York.
 
 3. Arbitrability
 
 29
 As the courts have repeatedly made clear, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943, 115 S.Ct. 1920; accord Bybyk, 81 F.3d at 1198. This concept applies to the issue of arbitrability as well, and thus the inquiry is whether the parties agreed to submit the question of arbitrability itself to arbitration. First Options, 514 U.S. at 944, 115 S.Ct. 1920.
 
 
 30
 Under the FAA, as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts. See id. at 944-45, 115 S.Ct. 1920; AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); see also Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir.2005). Consequently, the issue of whether the parties agreed to arbitrate a matter is to be decided by the courts and not the arbitrators, "[u]nless the parties clearly and unmistakably provide otherwise." AT & T Techs., 475 U.S. at 649, 106 S.Ct. 1415. The proper inquiry is whether "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s]." Contec, 398 F.3d at 208 (quotation omitted).
 
 
 31
 Schaffran relies heavily on Bybyk. The reliance is understandable, for in Bybyk, a case involving an NASD arbitration, this Court held that words in an agreement between the parties to the effect that "any and all controversies . . . shall be determined by arbitration" were "elastic enough" to encompass a dispute over arbitrability of a claim. 81 F.3d at 1199 (emphasis and brackets omitted). The Court held that the agreement did not expressly incorporate the Code, but noted in dicta that "[t]he language of the Code itself commits all issues, including issues of arbitrability. . ., to the arbitrators." Id. at 1202.
 
 
 32
 Bybyk, however, was limited by this Court's decision in John Hancock. There, we held that the dicta in Bybyk and decisions in other cases merely stood for the proposition that parties may overcome the presumption that the courts rather than arbitrators should decide arbitrability by showing the existence of a "separate agreement" between the parties that (1) employs language that "any and all controversies" shall be determined by arbitration and (2) expressly incorporates the provisions of the Code that mandate arbitration. John Hancock, 254 F.3d at 54-55. We went on to hold that one party's membership in the NASD, in the absence of a separate agreement between the parties, did not evince a clear and unmistakable intent to arbitrate the question of arbitrability. Id. at 55; see Bensadoun, 316 F.3d at 175 ("In John Hancock, we ruled that the NASD Code does not evidence a `clear and unmistakable' intent to submit the issue of arbitrability to arbitrators where only one party is a NASD member and the parties do not have a separate agreement to arbitrate.").
 
 
 33
 In Contec, this Court provided further guidance. There, the parties' arbitration agreement incorporated the commercial arbitration rules of the American Arbitration Association (the "AAA"). 398 F.3d at 207-08. The AAA rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. at 208 (quoting AAA Rule R-7(a)). We held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Id.
 
 B. Application
 
 34
 This case does not fall squarely within the cases discussed above. Although there is a Form U-4 signed by Schaffran, there is no separate agreement between the parties requiring arbitration. On the other hand, both parties are bound by the Code and other NASD rules and by-laws, as Alliance is a member of the NASD and Schaffran signed the Form U-4 and was a "person associated with a member" of the NASD. See Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 62, 65 n. 2 (2d Cir.1996). Moreover, as we discuss further below, unlike the AAA rules in Contec, the Code does not clearly and unmistakably provide for all issues of arbitrability to be arbitrated. Nonetheless, we affirm, for we hold that the Code unequivocally provides for the arbitrability dispute at issue in this case to be decided in arbitration rather than by the courts.
 
 
 35
 Schaffran suggests that all issues of arbitrability between an NASD member and an associated member must be decided in arbitration. We reject the suggestion as overly broad. First, the Form U-4 does not go that far, as it merely requires arbitration of "any dispute, claim or controversy. . . that is required to be arbitrated" under the Code. (Emphasis added). This language does not answer the question, for it requires arbitration only of disputes that the Code requires to be arbitrated. It is not as broad as the language in Bybyk, where the agreement provided that "any and all controversies . . . shall be determined by arbitration." 81 F.3d at 1199.
 
 
 36
 Second, the Code itself likewise does not require arbitration of "any and all controversies." But see id., 81 at 1202 (suggesting to the contrary). For example, an exception is made for "employment discrimination" claims, the very exception at issue in this case. Code Rule 10201(b). Likewise, members of the NASD are required by the Code to arbitrate only those disputes "eligible for submission" to the NASD.Code Rule 10201(a). Claims that are not "eligible" need not be submitted, and members violate the Code by failing to submit a claim to arbitration only when the Code requires the claim to be submitted. Code Rule IM-10100.
 
 
 37
 The Code does provide, however, that disputes over the interpretation of its provisions must be arbitrated. Rule 10324 provides that "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code. . . . Such interpretations . . . shall be final and binding upon the parties." This language clearly and unmistakably evinces an intent to submit any disputes over the interpretation of the Code rules to arbitration. Hence, the parties agreed, unequivocally, to submit disputes of this type to arbitration. See Von Buren v. Von Buren, 252 A.D.2d 950, 675 N.Y.S.2d 739, 739-40 (4th Dep't 1998) ("[W]hen the language is clear and unambiguous, the court is required to ascertain the intent of the parties from within the four corners of the instrument, and not from extrinsic evidence.") (internal quotation marks and alterations omitted).
 
 
 38
 The crux of the dispute as to arbitrability here concerns the interpretation and applicability of a provision of the Code, namely, Rule 10201(b). The question is whether the words "[a] claim alleging employment discrimination . . . in violation of a statute" in Rule 10201(b) encompass a whistleblower claim under § 806 of SOX.
 
 
 39
 Under Rule 10324, the parties agreed that the arbitrators would be "empowered" to interpret Rule 10201(b) and they agree further that any such determination would be "final and binding." Accordingly, the general presumption that arbitrability is a matter for the courts rather than arbitrators is overcome in this case, as the Code — which was expressly incorporated into the parties' agreement to arbitrate — clearly and unmistakably evinces the parties' intent to submit to arbitration disputes over arbitrability that turn on interpretations of provisions of the Code.
 
 
 CONCLUSION
 
 
 40
 The District Court's order dismissing the complaint is affirmed.
 
 
 
 Notes:
 
 
 *
 Denny Chin, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Schaffran technically was employed by the LP. For purposes of the appeal, we treat the three companies as one entity, as do the parties