COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





IN RE: READYONE INDUSTRIES, INC.
AND AMALIA LOPEZ,


 Relators.







 
§


 


§


 


§


 


§


 


§


 


 § 





No. 08-08-00221-CV


AN ORIGINAL PROCEEDING


IN MANDAMUS



OPINION ON PETITION FOR WRIT OF MANDAMUS


 In this original proceeding, Relators ReadyOne Industries, Inc. and Amalia Lopez seek a
writ of mandamus from the trial court's order denying its motion to compel arbitration. We
conditionally grant mandamus relief and request that the trial court compel arbitration.

 Maria Torres, the plaintiff in the underlying suit and the Real Party in Interest
(Torres/Real Party), contends she suffered a shoulder injury while working for Relators. She
sued Relators for their negligence in failing to maintain a safe working place. Relators moved to
compel arbitration on October 1, 2007. On March 10, 2008, the district court denied Relators'
motion to compel. Relators filed a motion to reconsider compelling arbitration on April 30,
2008, which was also denied.STATEMENT OF FACTS

 On February 23, 2005, Torres signed an arbitration agreement (Agreement) with her
employer, the National Center for Employment of the Disabled (NCED). This Agreement
requires that both Torres and her employer arbitrate "[a]ny injury suffered by Claimant while in
the Course and Scope of Claimant's employment with Company, including but not limited to,
claims for negligence, gross negligence, and all claims for personal injuries . . . ."

 In NCED's Restated Certificate of Formation with New Amendments, it simultaneously
adopted the Texas Business Organizations Code and changed its name to ReadyOne Industries,
Inc. (formerly National Center for Employment of the Disabled). Along with this name change,
ReadyOne Industries, Inc. (ReadyOne) also amended Articles 1-7 and added Articles 8-9 to its
certificate of formation. Specifically, the following changes were made: (i) change the filing
entity's name; (ii) update the registered agent and office; (iii) update the provisions regarding the
board of directors; (iv) provide that the filing entity has no members; (v) restate the filing entity's
purposes; (vi) restate the method of asset distribution upon the dissolution of the filing entity;
(vii) restate the prohibitions on certain activities; (viii) provide for limitation of the liability of
the directors and officers of the filing entity under certain circumstances; (ix) eliminate the
express period of duration of the filing entity; and (x) eliminate the name and address of the
organizer.

 Torres claims that on January 24, 2007, while working for Relators, she sustained an on-the-job injury to her shoulder. She sued the Relators for negligence for failing to furnish a safe
workplace and for failing to comply with OSHA safety standards. In the Relators' timely
answer, and before taking other action in the suit, they specifically asserted that a valid and
binding arbitration agreement was in existence and thus was controlling in the suit. Relators
moved to compel arbitration on October 1, 2007. On March 10, 2008, the district court denied
Relators' motion to compel. Relators filed a motion to reconsider compelling arbitration on
April 30, 2008. And while not in the record, it appears, based on the briefs of the Relators and
the Real Party, this motion to compel was also denied. On June 18, 2008, Relators filed their
Petition for Writ of Mandamus, seeking this Court's review of the trial court's order denying
their request to submit to binding arbitration.

STANDARD OF REVIEW


 A writ of mandamus will issue to correct a clear abuse of discretion when there is no
adequate remedy by appeal. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). A trial
court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a
clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. In re
Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005). The relator has the burden to establish that
the trial court abused its discretion. See id. Specifically, in evaluating a motion to compel
arbitration, the reviewing court must first determine whether a valid arbitration agreement exists
between the parties, applying ordinary principles of state contract law. In re D. Wilson Constr.
Co., 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). The court must then determine
whether the agreement encompasses the claims raised in the motion. Id. If a trial court
erroneously denies a party's motion to compel arbitration under the Federal Arbitration Act
(FAA), the movant has no adequate remedy at law and is entitled to a writ of mandamus. In re
Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005); Service Corp. Int'l v. Lopez (In
re Serv. Corp.), 162 S.W.3d 801, 808 (Tex.App.-Corpus Christi 2005, no pet.) (consolidated
appeal and original proceeding).

 A party seeking to compel arbitration by a writ of mandamus must establish the existence
of a valid agreement to arbitrate under the FAA and show that the claims in dispute are within
the scope of the agreement. In re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007) (per
curiam); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).

 In determining the validity of agreements to arbitrate, which are subject to the FAA, we
generally apply state-law principles governing the formation of contracts. In re Palm Harbor
Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938, 944, 115 S.Ct. 1920 (1995)). Whether a valid arbitration agreement exists is a
legal question subject to de novo review. In re D. Wilson Constr. Co., 196 S.W.3d at 781. If the
trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing
arbitration to prove his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex.
2003).

 We first consider whether Relators have established that the Federal Arbitration Act
(FAA) applies. In its motion to compel arbitration and in its Petition for Writ of Mandamus,
Relators asserted that the Agreement is governed by the FAA. The FAA applies to all suits in
state or federal court when the dispute concerns a "contract evidencing a transaction involving
commerce." Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig.
proceeding). "Commerce" has been broadly defined and encompasses contracts relating to
interstate commerce. In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex.App.-El Paso 1998,
orig. proceeding). The FAA does not require a substantial effect on interstate commerce; it only
requires that commerce be involved or affected. In re L & L Kempwood Assocs., L.P., 9 S.W.3d
125, 127 (Tex.1999) (orig. proceeding). Also important, if the parties expressly choose for their
arbitration agreement to be governed by the FAA, the agreement should be enforced regardless of
the parties nexus to interstate commerce. In re Kellogg Brown & Root, 80 S.W.3d 611, 617
(Tex.App.-Houston [1st Dist.] 2002, orig. proceeding); see also In Re Jim Walter Homes, Inc.,
207 S.W.3d 888, 896 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding) ("Courts honor the
parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for
application of the FAA.").

 Relying on In Re Jim Walter Homes and In re Kellogg Brown & Root, it is unnecessary
for this Court to examine whether the parties before this Court were involved in interstate
commerce. The express language in the agreement controls. In the February 23, 2005,
Agreement, the parties agreed that "[t]he FAA governs all aspects of this Agreement." This
Court will presume that "a party who signs a contract knows its contents." Cantella & Co. v.
Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding). Further, "[a] party's signature on
a written contract is 'strong evidence' that the party unconditionally assented to its terms." In re
Big 8 Food Stores, Ltd., 166 S.W.3d 869, 876 (Tex.App.-El Paso 2005, orig. proceeding). This
Court finds that the FAA applies to the Agreement between the Real Party and the Relators,
because the express language of the Agreement is controlling.

 Second, and putting aside the argument that the Real Party in Interest is no longer bound
by the Agreement because ReadyOne was not a party to the Agreement, there is no dispute that
the agreement to arbitrate, which is a contract, was entered into and executed properly. Torres
executed and accepted the Agreement with NCED on February 23, 2005, which is evidenced by
her signature. As stated above, this Court will presume that "a party who signs a contract knows
its contents." Cantella & Co., 924 S.W.2d at 944, and "[a] party's signature on a written contract
is 'strong evidence' that the party unconditionally assented to its terms." In re Big 8 Food
Stores, Ltd., 166 S.W.3d at 876. As the Relators point out, an arbitration agreement requiring
both parties to submit to arbitration constitutes sufficient consideration for the formation of an
enforceable contract. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 228 (Tex. 2003) (citing
In Re Halliburton Co., 80 S.W.3d 566 (Tex. 2002) (orig. proceeding)). In the present case the
record is clear that the Agreement was assented to by the Real Party and that sufficient
consideration existed under Texas law to make the Agreement an enforceable contract. 
Moreover, the Real Party's brief and the record is absent of an argument that the underlying
Agreement between NCED and her is somehow not valid. Because of the facts and controlling
law, an enforceable agreement did exist between NCED and the Real Party.

 After showing that a valid and enforceable agreement exists under the FAA, the Relators
must also present evidence to show that the claim by the Real Party is within the scope or
coverage of the agreement. In re Bank One, N.A., 216 S.W.3d at 826. The arbitration agreement
between the Real Party and Relators, as it relates to the underlying claim, is specifically covered 
in paragraph 5(a) of the Agreement. In part, paragraph 5(a)(i) reads as follows: "This
Agreement is mutual, covering all claims that Company or Claimant may have which arise from
. . . [a]ny injury suffered by Claimant while in the Course and Scope of Claimant's employment
with Company, including but not limited to, claims for negligence, gross negligence, and all
claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental
anguish, . . . ." The Real Party's claim falls squarely within the Agreement signed by her while
employed with NCED, and because she injured her shoulder while on the job, and she claims that
the Relators' negligence led to her injury, the Agreement covers her claim, subject to this Court's
analysis of whether the Agreement is still binding and in force. This Court finds that a valid
FAA agreement was entered into by NCED and the Real Party. The claims asserted in the
underlying cause are within the scope of the Agreement. The next section will determine if the
Agreement is still in force between the Relators and the Real Party.

 Arbitration of disputes is strongly favored both under Texas and federal law. Prudential
Secs., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995) (citing Moses H. Cone Memorial Hosp.
v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983); Brazoria County v. Knutson,
176 S.W.2d 740, 743 (1943)). Because of this policy decision by both governments, the Real
Party has a steep hill to climb in having an enforceable arbitration agreement nullified. Positive
law, like a statutory exception, or case law rooted in equity would be essential in having a court
not enforce a valid arbitration agreement. A hypothetical example of such law, in the present
case, would be an exception contained in the FAA or an equitable remedy relieving a party of its
obligation in the case of a corporate change which falls short of a fundamental corporate change
like a merger, dissolution, or hostile takeover, which affects the corporate existence.

 In the present case the Real Party makes the novel argument that because NCED is now
ReadyOne and because ReadyOne (formerly NCED) has amended and restated its certificate of
formation, the Agreement in not enforceable. The crux of this argument is that when a business
entity substantially changes its character, and the changes fall short of ending or making a new
corporate existence, prior obligations with contracting parties are void or nullified, because the
new party was not a signatory to prior obligations. For this to be true, it must be shown that
ReadyOne is not merely rebranded but is a new entity under Texas law.

 Texas has already tackled the impact of a name change on an arbitration agreement. The 
H&R Block court found "[u]nder ordinary legal principles, a contracting party that has merely
changed its name is still a contracting party." In re H & R Block Financial Advisors, Inc., 235
S.W.3d 177, 178 (Tex. 2007) (citing, e.g., Coulson v. Lake LBJ Mun. Util. Dist., 781 S.W.2d
594, 595 (Tex. 1989); Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, 630 (1941)). 
"Accordingly, the company's change of name does not prevent it from invoking its own
arbitration agreements." Id.; see also Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 207
(2d Cir. 2005); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.
1993). It is clear that in Texas a corporate name change does not affect the contractual
obligations of parties existing prior to the name change, so a business entity with a new name
may invoke an arbitration agreement that was signed by the same company prior to the name
change.

 No clear authority exists on what impact a restated corporate purpose or other
amendments to the certificate of formation has on contractual obligations in existence at the time
of the changes. In Contec the Second Circuit Court of Appeals found that even when there had
been corporate name and form changes, the surviving entity should be permitted to enforce the
agreement. Contec Corp., 398 F.3d at 210. The rational of H&R Block and Contec thus suggests
that name changes do not eliminate contractual obligation in place before these changes. NCED
restated and made amendments to its certificate of formation. Amendments and restatements do
not create a new entity. When the term amendment and restate are given their plain meanings,
the terms do not mean to "create a new." This is evidenced by two items in the Secretary of
State's communications with ReadyOne and NCED. First, the Secretary of State now refers to
ReadyOne as formerly: NATIONAL CENTER FOR EMPLOYMENT OF THE DISABLED. 
Second, in ReadyOne's certificate of filing, the filing number is 112382901; identical to NCED's
certificate of filing. By referring to ReadyOne as formerly NCED and by keeping the file
numbers the same, the Secretary of State is putting the public on notice that the two entities are
the same under Texas law.

 The Texas Business Organizations Code (BOC) also supports the finding that ReadyOne
is merely a rebranded NCED. First, under the BOC a corporation has a perpetual existence
unless otherwise stated in the certificate of formation. Tex.Bus.Org.Code Ann. § 3.005(a)(4)
(Vernon Supp. 2008). Changing a corporate name or form does not end this perpetual existence. 
Specifically, to terminate a corporate existence, the business entity must conduct a windup.
Tex.Bus.Org.Code Ann. § 11.052. During this windup the entity must discharge its property to
satisfy its obligations. Id. Most importantly, after the windup is complete, the entity must file a
certificate of termination. Tex.Bus.Org.Code Ann. § 11.101. So, the corporate entity does not
cease to exist until the termination is filed. Tex.Bus.Org.Code Ann. § 11.102. Based on the
evidence before this Court, NCED still exists, but now it has a new operating name and restated
purpose. Neither the Real Party nor Relators were able to find law indicating that a series of
amendments or restaments of corporate purpose makes an entity a new company and thus
relieving underlying contractual obligations. A corporation in Texas is permitted to freely restate
or amend its certificate of formation. Tex.Bus.Org.Code Ann. §§ 3.056, 3.057. Absent in the
Texas BOC is a provision which supports the Real Party's argument. Because no law supports
the Real Party's argument that ReadyOne is nothing more than a rebranded NCED, and because
NCED is still in existence in the eyes of Texas, this Court finds that the arbitration can be
invoked by ReadyOne (formerly NCED).


WAIVER


 A party waives the right to arbitrate by substantially invoking the judicial process to the
other party's detriment or prejudice. In re Fleetwood Homes of Tex., L.P., 257 S.W.3d 692, 694
(Tex. 2008) (orig. proceeding). Waiver is a legal question for the court based on the totality of
the circumstances, and asks whether a party has substantially invoked the judicial process to an
opponent's detriment, the latter term meaning inherent unfairness caused by "a party's attempt to
have it both ways by switching between litigation and arbitration to its own advantage." See id.
(quoting Perry Homes v. Cull, 258 S.W.3d 580, 597 (Tex. 2008)). Waiver must be decided on a
case-by-case basis, and courts should look to the totality of the circumstances involved. We
consider factors such as when the movant knew of the arbitration clause, how much discovery
has been conducted, who initiated it, whether it related to the merits rather than arbitrability or
standing, how much of it would be useful in arbitration, and whether the movant sought
judgment on the merits. Perry Homes, 258 S.W.3d at 591-92.

 The Real Party in Interest argues that the litigation process has been substantially
invoked, because both sides have completed extensive discovery, which goes to the merits of the
case. The Relators made a request for disclosure, eight interrogatories, fifteen requests for
production, and conducted two depositions. The request for disclosure, eight interrogatories, and
fifteen requests for production were made on March 14, and 18, 2008. Relators filed their
motion to compel arbitration on October 1, 2007, but the trial court did not rule on the motion
until March 10, 2008. On April 30, 2008, Relators filed a motion to reconsider compelling
arbitration, which was denied.

 The discovery was conducted after the motion to compel arbitration was denied. We do
not find that this conduct acts as a waiver. From the beginning of this litigation the Relators have
attempted to invoke the arbitration agreement. In their first pleading, the Relators expressed that
the arbitration agreement precludes state court litigation. Relators have not filed any affirmative
claims for relief nor sought any judgments on the merits. They proffered two witnesses for
deposition explicitly stating that the deposition was subject to an upcoming motion to reconsider
the denial of the motion to compel arbitration. However, there is no record of the content of
those depositions. The Real Party argues that all medical records have been exchanged, but this
is not represented in the Relators' Record. The only medical document in the record is an
Accident Investigation Report, which indicates that the Real Party is experiencing pain in her left
shoulder. Critical to this type of litigation would be the diagnoses of her condition by a medical
doctor and some testimony that her condition could be caused by her workplace duties.

 Based on the totality of the circumstances, the discovery conducted in this case does not
amount to substantially invoking the litigation process. The Texas Supreme Court has found that
eighteen interrogatories and one set of nineteen requests for production did not waive the right to
compel arbitration. In re Bruce Terminix Co., 988 S.W.2d 702, 704 (Tex. 1998). The Texas
Supreme Court has also found that taking four depositions does not waive the right to arbitrate. 
In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006). In Vesta Ins. Group, the Court
found "the record does not show whether these requests were limited or extensive, whether they
sought information for affirmative claims or defensive ones, or even whether they addressed the
merits or merely the arbitration issue." Id. The same is true in this case. The content of the
depositions is not available for this Court to review, nor was it available for the trial court to
review in the Real Party in Interest's response in opposition to Defendant's motion to reconsider
compelling arbitration. Most importantly, the Relators did not try to hide their desire to arbitrate
this claim. In fact they tried twice to compel arbitration, once before any discovery had been
completed.

 Crucial to the Perry outcome was the fact that the party seeking to arbitrate waited until
fourteen months after the case was filed to assert the right to do so.

 14 months after filing suit and shortly before the December 2001 trial setting, the
Culls changed their minds and requested arbitration. They justified their change
of heart on the basis that they wanted to avoid the delays of an appeal. But their
change unquestionably delayed adjudication of the merits; instead of a trial
beginning in a few days or weeks, the plenary arbitration hearing did not begin
until late September of 2002-almost ten months after the Culls abandoned their
trial setting. Moreover, to the extent arbitration reduces delay, it does so by
severely limiting both pretrial discovery and post-trial review. Having enjoyed
the benefits of extensive discovery for 14 months, the Culls could not decide only
then that they were in a hurry.


Perry Homes, 258 S.W.3d at 596-97. The court was clear to point out that while they found that
the Culls had substantially invoked the judicial process that was only one part of a totality of the
circumstances review. Id. at 596.

 Thus, we should also look at the conduct of the parties. Id. In this case it is clear that the
Relators desired to arbitrate the claim pursuant to an enforceable arbitration agreement from the
early stages of the litigation. If the Supreme Court in Perry could have hung its hat solely on the
amount of discovery that had been completed, it would not have continued to review how the
Culls originally objected to arbitration, and then fourteen months later argued they were entitled
to arbitrate.

 We resolve any doubts that we have regarding waiver in favor of arbitration. Nw. Constr.
Co. v. Oak Partners, L.P., 248 S.W.3d 837, 847 (Tex.App.-Fort Worth 2008, pet. denied). 
Considering the above in addition to the totality of the circumstances, we disagree that Relators
waived their right to compel arbitration, because they have not substantially invoked the judicial
process.

 We also find that the Real Party has not shown that she will be prejudiced by arbitration. 
Fleetwood Homes of Tex., L.P., 257 S.W.3d at 694. Contrary to the assertions of the Real Party,
the litigation process will not have to start over if the parties arbitrate this case. There is no
evidence that the discovery already obtained could not be used at arbitration. Absent a showing
that some evidence discovered would not be attainable in arbitration, no prejudice has occurred. 
In re Bruce Terminix Co., 988 S.W.2d at 704.

DELAY

 We also find the Real Party's inexplicable delay argument unpersuasive. While some
time did occur between the motion to compel and the date the trial court ruled on the motion, it is
unclear from the record what caused the delay. On September 14, 2007, Relators answered the
petition and raised its right to arbitrate. On October 1, 2007, Relators filed their motion to
compel arbitration. A hearing was had on the motion, and the trial judge gave the Relators extra
time to supplement the motion to compel, which they did on October 29, 2007. The trial court
did not rule on the motion until March 10, 2008. The record is simply too unclear for this Court
to determine if a second hearing was supposed to be conducted after October 29, 2007. It is
entirely possible that the trial court intended to make its ruling with the evidence it had before it,
and it took over four months for the trial court to issue its ruling.

 Accordingly, we conclude that the record does not provide the trial court with discretion
to find Relators waived their right to arbitration. We conditionally grant ReadyOne's and Amalia
Lopez's petition, and request the trial court to vacate its order denying the Relators' motion to
compel arbitration, to issue an order compelling Torres to arbitrate her claims, and to stay all
proceedings pending arbitration. Only if the trial court fails to comply with these directions shall
we instruct the Clerk to issue the writ.


 DAVID WELLINGTON CHEW, Chief Justice


August 19, 2009


Before Chew, C.J., McClure, and Gomez, Judge

Gomez, Judge, sitting by assignment