In re **TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION.**

**This document relates to All Plaintiffs' Economic Loss Cases.**

**Case No. 8:10ML 02151 JVS (FMOx).**

United States District Court, C.D. California.

March 12, 2012.

Andrea Bierstein, Clinton B. Fisher, Jayne Conroy, Mitchell M. Breit, Paul J. Hanly, Jr., Thomas I. Sheridan, III, Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP, New York, NY, Daniel H. Chang, Diversity Law Group APC, Edward Wonkyu Choi, Choi & Associates Law Offices, Los Angeles, CA, David C. Wright, Jae Kook Kim, Kristy M. Arevalo, Richard D. McCune, Jr., McCune Wright LLP, Redlands, CA, Derek Yeats Brandt,

Simmons Browder Gianaris Angelides & Barnerd LLC, Alton, IL, Peter J. Cambs, Parker Waichman Alonso LLP, Bonita Springs, FL, Elizabeth Joan Cabraser, Lieff Cabraser Heimann and Bernstein LLP, San Francisco, CA, Fred R. Rosenthal, Fred Rosenthal Law Offices, Port Washington, NY, Lisa M. Hasselman, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiff.

Joel H. Smith, Bowman and Brooke LLP, Steven A. McKelvey, William H. Latham, Nelson Mullins Riley & Scarborough LLP, Columbia, SC, Thomas Jerome Nolan, Skadden Arps Slate Meagher & Flom LLP, John D. Arya, Lisa Gilford, Roger A. Cerda, Alston & Bird LLP, Rachel Aleeza Rappaport, Loeb & Loeb LLP, Theane Evangelis Kapur, Theodore J. Boutrous, Jr., Gibson Dunn & Crutcher LLP, Los Angeles, CA, Abbey Chun Furlong, Robert V.P. Waterman, Jr., Lane & Waterman LLP, Davenport, IA, Andrew B. Cooke, Flaherty Sensabaugh & Bonasso, Rebecca A. Betts, Allen Guthrie & Thomas, Charleston, WV, Anne O. Hanna, Curtis E. Jimerson, Kathleen A. York, Matthew J. Tamel, Vincent Galvin, Jr., Bowman and Brooke LLP, San Jose, CA, Anneke J. Shepard, King & Spalding LLP, Cari K. Dawson, Derin B. Dickerson, Kyle G.A. Wallace, Alston & Bird LLP, Atlanta, GA, Antonio Gnocchi–Franco, Gnocchi–Franco Law Office, San Juan, PR, Bard D. Borkon, Theodore Dorenkamp, Bowman and Brooke LLP, Minneapolis, MN, Craig Carpenito, Judith Anna Amorosa, Karl Geercken, Alston & Bird LLP, New York, NY, Clem C. Trischler, Pietragallo Gordon Alfano Bosick and Raspanti LLP, Pittsburgh, PA, Daniel W. Olivas, J. Randolph Bibb, Jr., Lewis, King, Krieg & Waldrop, P.C., Donna L. Roberts, Stephen H. Price, Stites & Harbison, PLLC, Nashville, TN, David Lawrence Ayers, Jennifer Ann Rogers, Watkins and Eager, Jackson, MS, Greg W. Marsh, Greg W. Marsh, Law Offices of, Todd E. Kennedy, Lionel, Sawyer & Collins, Las Vegas, NV, Gregory A. Harrison, Dinsmore & Shohl, Cincinnati, OH, J. Karl Viehman, Suzanne H. Swaner, Yesenia E. Cardenas–Colenso, Bowman and Brooke LLP, Dallas, TX, Joel Allen Dewey, DLA Piper LLP, Baltimore, MD, Karen M. Cadieux, Timothy R. Bricker, Carpenter Lipps & Leland LLP, Columbus, OH, Kathryn Ashley Meyers, Lewis Tein PL, Coconut Grov., FL, Lee A. Rosenthal, Linsey W. West, Dinsmore & Shohl LLP, Lexington, KY, Mary Michelle Kranzow, Thomas M. Klein, William Francis Auther, Bowman and Brooke LLP, Phoenix, AZ, Michael Ross Tein, Coconut Grove, FL, Patrick Darrow Wilson, Wright, Lindsey & Jennings, Little Rock, AR, Paul J. Osowski, Nelson Mullins Riley & Scarborough, LLP, Charlotte, NC, Robert L. Blank, Rumberger Kirk & Caldwell PA, Tampa, FL, Robert G. Scumaci, Gibson, McAskill & Crosby LLP, Buffalo, NY, Ross W. Johnson, Faegre & Benson LLP, Des Moines, IA, Steven R. Kramer, Eckert Seamans Cherin & Mellott, LLC, White Plains, NY, C. Brandon Wisoff, Douglas R. Young, Farella Braun & Martel LLP, San Francisco, CA, Kendra N. Beckwith, Wheeler Trigg O'Donnell LLP, Denver, CO, for Defendant.

## ORDER DENYING MOTION TO COMPEL ARBITRATION

JAMES V. SELNA, District Judge.

### Table of Contents

I. Introduction and Procedural Background ...................................971

II. The Federal Arbitration Act .............................................973

III. Waiver of the Right to Arbitrate ...........................................974
 A. Who Decides the Issue of Waiver? ......................................974
 B. Standard for Finding Waiver of the Right to Arbitrate .....................975
 C. Application of Standard for Finding Waiver ............................976
 1. Knowledge of an Existing Right to Compel Arbitration................976
 a. California Plaintiffs ........................................976
 b. Non–California Plaintiffs .................................978
 2. Acts Inconsistent with the Right to Compel Arbitration ..............978
 3. Resulting Prejudice to the Party Opposing Arbitration................979
 D. Ruling Regarding Waiver ...........................................980

IV. Right of Third Party to Enforce Agreements to Arbitrate ......................980
 A. Equitable Estoppel Permits Non–Signatories to Enforce Agreements to
 Arbitrate ........................................................980
 B. Who Decides Whether Non–Signatories May Enforce Agreements to
 Arbitrate? .......................................................981
 1. General Presumption—Courts Decide Arbitrability ..................981
 2. Parties to an Agreement to Arbitrate May Narrow the Scope of the
 Court's Role in Deciding Issues of Arbitrability by Delegating
 that Role to the Arbitrator ......................................981
 3. The Court's Role Here ........................................983
 a. The Court Must Interpret and Apply the FAA.....................983
 b. Section 2 Issues ...........................................984
 c. Section 4 Issues ..........................................985
 4. Case Law Cited by Toyota is Unpersuasive .........................985
 5. Conclusion Regarding Who Decides Whether Non–Signatories May
 Enforce Agreements to Arbitrate ................................987

V. Agreements to Arbitrate ................................................987
 A. New York Class Representative ......................................988
 B. Florida Class Representatives ......................................988
 1. Carol Danziger...............................................988
 2. Ziva Goldstein ..............................................989
 3. Charles Henry ..............................................989
 4. Linda Savoy ................................................989

VI. Equitable Estoppel Does Not Require Arbitration.............................990
 A. The Manufacturer's Warranty Claims Are Unrelated.......................991
 B. The Fraud and Consumer Statutory Claims Are Unrelated .................993
 C. Ruling as to Equitable Estoppel.....................................994

VII. Conclusion..........................................................995

This action arises out of Plaintiffs' purchase of vehicles designed, manufactured, distributed, marketed, and sold by Defendants Toyota Motor Corporation dba Toyota Motor North America, Inc. ("TMC"), and its subsidiary, Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "the Toyota Defendants"). Putative classes of Plaintiffs seek damages for diminution in the market value of their vehicles in light of defects in those vehicles which lead to incidents of sudden, unintended acceleration ("SUA").

I. *Introduction and Procedural Background*

Presently before the Court is Defendants' Motion to Compel Arbitration of claims asserted in the bellwether putative class action. (Docket No. 2007). Plaintiffs have filed a timely Opposition, and Defendants have filed a timely Reply.[1] (Docket Nos. 2203 & 2222.)

1. After all filings in accordance with the Local Rules were filed, the parties filed a number of

A bellwether class action trial is currently set for July 31, 2013. (Docket No. 1955 ("Order No. 17").) Relating to this bellwether, Plaintiffs have identified twenty-seven named putative class representatives ("the Class Representatives"),[2] and Toyota moves to compel arbitration as to the claims of twenty-one of them. (*See* Docket No. 1797 at 22 (identification of the Class Representatives); *Motion* at 3 n. 3 (list of Plaintiffs whose claims Toyota seeks to submit to arbitration).) The claims of one of those Plaintiffs, Ada Morales, have been dismissed without prejudice. (*See* Docket No. 2206.) Thus, the Court's present Order addresses the claims of twenty Plaintiffs.[3]

The arbitration provisions pursuant to which Toyota seeks to compel arbitration are found in new and used vehicle purchase and lease agreements. These provisions are all similar but they are not uniform. Neither Toyota Defendant is a party to any of these agreements containing the arbitration provisions.

Herein, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., and the relevant arbitration agreements, the Court examines whether any claim asserted by the Class Representatives must be submitted to arbitration. As set forth

---

unauthorized supplemental filings both before and after the hearing on this matter on February 28, 2012.

A week in advance of the hearing, Plaintiffs filed their Notice of Recent Authority in Support of Plaintiffs' Opposition (Docket No. 2251) advising the Court of a then week-old California Court of Appeal decision they believe supports their Opposition to the present Motion to Compel Arbitration.

The following day, Toyota filed its Response to Plaintiffs' Notice of Supplemental Authority (Docket No. 2258), responding to Plaintiffs' supplemental authority and expanding its argument regarding whether the Court or an arbitrator decides "gateway" questions.

The day of the hearing, Toyota filed its Supplemental Declaration of Cari K. Dawson in Support of Toyota's Motion to Compel Arbitration (Docket No. 2275), attaching a number of documents already part of the record in this MDL, which Toyota contends supports the argument that they did not waive the right to seek arbitration of Plaintiffs' claims. Separately, at the hearing, Toyota provided to the Court a spiral bound notebook of "Demonstratives" to be used at the hearing on the Motion to Compel.

The day after the hearing, with the filing of Plaintiffs' Response to Toyota's New Authority and Demonstratives re Motion To Compel Arbitration (Docket No. 2280), Plaintiffs contended they were offered no opportunity to respond to a previously uncited case and demonstratives used to make new arguments. They also set forth their response thereto.

The following day, Defendants responded in their Response to Plaintiffs' Post–Hearing Brief (Docket No. 2282), further commenting on issues previously briefed.

Later that same day, Plaintiffs filed their Objection to Toyota's Response to Plaintiffs' Response to Toyota's New Authority and Demonstratives (Docket No. 2283), which appears to be the final filing on the present Motion by either side.

2. This designation is for the sake of clarity; no class has yet been certified, and resolution of any class certification is not expected in the near future. (*See* Order No. 17 at 4 (setting January 16, 2013, as the date for a class certification hearing).) Where appropriate, the Court also herein refers to these Plaintiffs as "the Florida Plaintiffs" and "the New York Plaintiffs." The Court also refers to the Class Representatives as "Plaintiffs," although as appropriate in context this term should be understood to be limited to the Plaintiffs whose agreements to arbitrate are implicated by the present Motion.

3. Those Plaintiffs are Kathleen Atwater, Dale Baldisserri, Charmayne Bennett, Joseph Hauter, Dr. Aly Mahmoud, Lucinda Mahmoud, Peggie Perkin, Janette Seymour, Tully Seymour, Linda Tang, Carol Danziger, Ziva Goldstein, Tom Gudmundson, Linda Savoy, Elizabeth Van Zyl, Rocco Doino, Bridie Doino, John Laidlaw, Mary Laidlaw, and Charles Henry.

below, the Court determines that Toyota waived any right it may have had to compel arbitration of fifteen of the twenty Class Representatives' claims.[4] As to the remaining five, the Court determines that Toyota, as a non-signatory, may not enforce the arbitration agreements found in the Plaintiffs' purchase and lease agreements with Toyota dealers. Accordingly, the Court denies the Motion to Compel Arbitration.

## II. *The Federal Arbitration Act*

The FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements," and is meant "to ensur[e] that private arbitration agreements are enforced according to their terms." *AT & T Mobility LLC v. Concepcion,* — U.S. —, 131 S.Ct. 1740, 1745, 1748, 179 L.Ed.2d 742 (2011) (internal quotation marks and citations omitted).

The FAA "creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Cape Flattery Ltd. v. Titan Maritime, LLC,* 647 F.3d 914, 918 (9th Cir.2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The FAA reflects a federal policy favoring arbitration, "a fundamental principle that arbitration is a matter of contract," and requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion,* 131 S.Ct. at 1745 (citations omitted).

■■■ Under the FAA, a party to an arbitration agreement may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4. Ambiguities as to the scope of the arbitra-

tion provision must be interpreted in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *see also AT & T Techs. Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The FAA also requires "district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 698 (9th Cir.1986).

■■■ A district court may not review the merits of the dispute when determining whether to compel arbitration. *Cox v. Ocean View Hotel, Corp.,* 533 F.3d 1114, 1119 (9th Cir.2008). Instead, the FAA limits the district court's role "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Id.* (internal citation and quotation omitted). If a valid arbitration agreement exists, the district court is required to enforce the arbitration agreements according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir.2004).

■■■ Section 2 of the Act requires courts to enforce agreements to arbitrate:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

4. Five Plaintiffs, Charmayne Bennett, Carol Danziger, Ziva Goldstein, Charles Henry, and Linda Savoy, were not added as named Plaintiffs until September 20, 2011. The waiver analysis is inapplicable to these Plaintiffs. Plaintiffs do not contend otherwise.

9 U.S.C. § 2. The final clause of this section, the "savings clause," permits agreements to arbitrate to be avoided on state-law grounds that are generally applicable to all contracts, and that do not "stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 131 S.Ct. at 1748. In other words, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (emphasis in the original). In contrast, "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2." *Id.; accord Concepcion*, 131 S.Ct. at 1746.

Section 4 of the FAA empowers the Court, under appropriate circumstances, to issue an order compelling a party to submit claims to arbitration in accordance with the agreement:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [an appropriate] United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

### III. *Waiver of the Right to Arbitrate*

Plaintiffs urge the Court to find that whatever right the Toyota Defendants may otherwise have possessed to compel arbitration of the claims asserted by the Class Representatives,[5] that right has been waived by their conduct in defending the present litigation. (Opp'n at 11–20.) As to fifteen of the twenty Plaintiffs, the Court agrees.

### A. *Who Decides the Issue of Waiver?*

At the outset, the Court must address whether it or whether the arbitrator should determine the issue of waiver. In an argument that relies on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) and that was raised for the first time in the Reply brief,[6] the Toyota Defendants contend that issue must be decided by an arbitrator rather than the Court. (*See* Reply at 5.) This argument is not without support. Characterizing "allegation[s] of waiver, delay, or a like defense to arbitrability" as "procedural questions," the Court noted that these questions are presumptively decided by the arbitrator. *Howsam*, 537 U.S. at 84, 123 S.Ct. 588 (relying on *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In doing so, *Howsam* defined a whole separate category of questions, which it referred to as "procedural questions," which it clearly views as analytically

---

**5.** Because the issue is not currently before the Court, the Court expresses no opinion regarding whether Toyota has waived the right to compel arbitration of the claims of absent class members. (*Cf.* Motion at 23–24.)

**6.** The failure to raise this argument until the Reply brief is a separate, independent reason for rejecting Toyota's argument based on *Howsam*. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir.2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

distinct from "questions of arbitrability." *Howsam,* 537 U.S. at 84, 123 S.Ct. 588. The *Howsam* Court held that such "procedural questions" are presumptively for the arbitrator to decide. *Id.*

Although this discussion in *Howsam* appears at first glance to answer the question before the Court, subsequent Circuit Court opinions have made a refinement to this discussion that put it in a more focused perspective. The Eleventh Circuit recently explained that three other Circuit Courts have interpreted *Howsam* as presumptively allocating to the Court rather than the arbitrator the issue of waiver when waiver is based on the conduct of the party seeking to compel arbitration. *Grigsby & Assoc., Inc. v. M Securities Inv.,* 664 F.3d 1350, 1353 (11th Cir.2011) (citing *JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 393–94 (6th Cir.2008); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 217–19 (3d Cir.2007); *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 12–14 (1st Cir.2005)). *Grigsby* noted that these courts "treated *Howsam's* use of the term 'waiver' as referring not to conduct-based waiver, 'but to a defense[ ] arising from non-compliance with contractual conditions precedent to arbitration.'" *Id.* (quoting *Ehleiter,* 482 F.3d at 219 and citing *JPD, Inc.,* 539 F.3d at 393–94). The Eleventh Circuit adopted this interpretation. *Id.; but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.,* 328 F.3d 462, 466 (8th Cir.2003) (ordering issue of conduct-based waiver to be presented to arbitrator).

The weight of the case law thus weighs in favor of interpreting *Howsam's* discussion of waiver to apply only to situations not involving the type of conduct-based waiver at issue here.

Moreover, although not expressly adopting rationale of the cases cited above, the Ninth Circuit has applied *Howsam* in a manner consistent with the First, Third, Sixth, and Eleventh Circuits, as well as the Court's decision today. Specifically, the Ninth Circuit considered the "who decides" the issue of waiver language found in *Howsam,* but decided that the Court, not the arbitrator, was required to decide the issue of waiver where the party resisting arbitration did so on the grounds of breach and conduct-based waiver. *Cox,* 533 F.3d at 1120–21 & nn. 3–6. In doing so, the majority impliedly rejected the position advocated by the dissent, *i.e.,* that *Howsam* controlled and the court was required to follow the simple dictate that the issue of waiver should be submitted to the arbitrator. *See id.* at 1127 (in dissent). As it is, just as Cox "contend[ed] that Ocean View revoked the [arbitration] clause through its own breach or waiver of the agreement to arbitrate," Plaintiffs here contend that the Toyota Defendants are not entitled to enforce the relevant agreements to arbitrate because of their actions relevant to waiver. *See id.* at 1121.

■ In the end, this Court is persuaded by the rationale of the First, Third, Sixth and Eleventh Circuits on this issue. The Court notes that the Ninth Circuit *Ocean View* decision, although not expressly premised on this rationale, is nonetheless consistent with it.

Thus, it is the duty of the Court to determine whether the agreements to arbitrate bind Plaintiffs notwithstanding the actions of the Toyota Defendants that are inconsistent with exercising any right to compel arbitration pursuant to those agreements.

### B. *Standard for Finding Waiver of the Right to Arbitrate*

■ "The right to arbitration, like any other contract right, can be waived." *United States v. Park Place Associates, Ltd.,* 563 F.3d 907, 921 (9th Cir.2009) (citation omitted). However, a party arguing

waiver of the right to arbitrate "bears a heavy burden of proof." *Id.* (internal quotation marks and citation omitted). To demonstrate waiver of the right to arbitrate, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (internal quotation marks and citation omitted).

 Determination of the waiver issue "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher,* 791 F.2d at 694. Doubts regarding defenses against arbitrability, such as waiver or delay, should be resolved in favor of arbitration. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

### C. *Application of Standard for Finding Waiver*

 Applying this stringent standard, the Court examines each required element of waiver, and ultimately finds Plaintiffs have carried the "heavy burden of proof" of establishing waiver. *Park Place Associates,* 563 F.3d at 921.

### 1. *Knowledge of an Existing Right to Compel Arbitration*

Toyota contends that before the United States Supreme Court decided *Concepcion,* 131 S.Ct. at 1745 & 1748, it had no knowledge of a right to compel arbitration. More specifically, Toyota contends that before *Concepcion,* it in fact had no right to compel arbitration of those claims. (Motion at 24 ("Thus, because Toyota had no

right to compel Plaintiffs to arbitrate prior to *Concepcion,* Toyota has not waived its right to compel arbitration of Plaintiffs' claims.").)

The relevant considerations are different for California and non-California Plaintiffs.

#### a. *California Plaintiffs*

As noted previously, the savings clause found in § 2 of the FAA permits agreements to arbitrate to be avoided on grounds that are generally applicable to all contracts. The savings clause has been the subject of much litigation, and is implicated here. Specific to class actions, and more specifically to consumer class actions in California, the clause has been implicated in cases in which the agreement to arbitrate included language that effectuated a waiver of the right to assert claims on behalf of those similarly situated, *i.e.,* to act as a class representative. Many of the agreements to arbitrate at issue here contain such a waiver of the right to maintain a class action. (*See* Dawson Decl. Ex. A (Docket No. 2006–2) (chart summarizing language found in agreements to arbitrate).)

Until the United States Supreme Court decided *Concepcion* last spring, in California, courts did not permit such waivers to be effectuated and required instead that the defendant choose between classwide arbitration or waiver of the arbitral forum completely. *See Discover Bank v. Superior Court,* 36 Cal.4th 148, 172–73 & n. 8, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). In *Discover Bank,* the court held that, where a number of circumstances are met, such waivers are unenforceable as unconscionable:

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior

bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then ... the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Id.* at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (quoting Cal. Civ.Code § 1668). The court went on to impose a system that permitted agreements to arbitrate individual claims to be enforced, but required, in the appropriate case, that the claims be treated on a class-wide basis. *Id.* at 172–73 & n. 8, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005).

The lower courts applied this rule, known as the *Discover Bank* rule, and refused to compel arbitration in *Concepcion.* The Supreme Court ultimately disagreed, rejecting the Ninth Circuit's conclusion that the *Discover Bank* rule was a refinement on the law of unconscionability applicable generally to contracts in California, and instead concluding that the *Discover Bank* rule was preempted by the FAA notwithstanding the FAA's saving clause. *Concepcion,* 131 S.Ct. at 1745, 1753. The key was the *Discover Bank* rule's lack of *general* applicability.

The Court held that although the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' the FAA does not permit such invalidation where the those defenses either "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"." *Id.* at 1746. Generally, a statutory savings clause cannot be construed as permitting a state-law right that is "inconsistent with the provisions of the act." *Id.* The Court reasoned that the *Discover*

*Bank* rule, by "[r]equiring the availability of classwide arbitration[,] interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.

In reaching this conclusion, the Court focused on the intended informality of the arbitral forum, and how that characteristic is unavoidably altered in classwide arbitration. The Court identified the informality of the arbitral forum as its "principal advantage," and noted that the added delay, additional costs, and likelihood of "generat[ing] procedural morass [rather than] final judgment" made enforcement of the *Discover Bank* rule inconsistent with the FAA, the purpose of which is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion,* 131 S.Ct. at 1748, 1751. Relatedly, classwide treatment and absent class members introduce specific due process concerns into the arbitral forum that are not generally implicated in individual arbitration proceedings, thus requiring additional formalities to be managed by the arbitrator. *Id.* Moreover, the difficulties encountered by the shift from an informal individual arbitration to arbitration accompanied by the formalities required in cases of classwide treatment are compounded by the lack of appellate review of arbitration decisions. *Id.* at 1752.

Thus, the Court concluded that because the *Discover Bank* rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ... [it] is preempted by the FAA." *Id.* at 1753.

In California, *Concepcion* undoubtedly altered the analysis of agreements to arbitrate found in consumer agreements. Therefore, the Court finds that the date of its issuance, April 27, 2011, marks the date when Toyota unquestionably had knowl-

edge of the right to compel arbitration of the California Class Representative claims. As of that date,[7] the previously identified obstacle to seeking arbitration was removed.

### b. *Non–California Plaintiffs*

Toyota contends that it delayed seeking arbitration of non-California Plaintiffs because Plaintiffs sought to assert claims under California law on behalf of a nationwide class. (*See* Motion at 25 & n. 7.) However, on January, 10, 2011, upon the filing of the Second Amended Economic Loss Master Consolidated Complaint (Docket No. 580) ("SAMCC"), alternate state law counts were set forth under the laws of all fifty states. Those states were not subject to the California *Discover Bank* rule. Although Plaintiffs contended that choice-of-law principles should permit a nationwide class, Toyota has always contended otherwise, and anticipation of a choice-of-law defense pursuant to *Discover Bank* by Plaintiffs does not negate Toyota's knowledge of a right to arbitrate. Therefore, January 10, 2011, is the most significant date as to Non–California Plaintiffs.

### 2. *Acts Inconsistent with the Right to Compel Arbitration*

In the eleven months between the time of the filing of the SAMCC and the filing of the present Motion, and in the seven months between the time of the *Concep-*

*cion* decision and the filing of the present Motion, Toyota has been completely engaged in the present multi-district litigation ("MDL") without offering any expression of the intent to seek arbitration of the present claims. Although Toyota cites other cases in which the courts have found no waiver when a party failed to act for longer periods of time (*see* Motion at 24), the consequences of Toyota's full engagement in the present litigation has far-reaching ramifications due solely to its size: The enormity of the present litigation should not be understated, and Toyota itself has long-acknowledged that the present action potentially involves the class claims of forty million class members. (*See* 06/23/2010 Tr. at 32 (statement of Toyota counsel).)

More specifically, during the relevant time period, over 1,400 filings were made. The parties engaged in extensive motions practice before the Court.[8] The Court has certified the issue of standing for interlocutory appeal. The parties engaged in resolving discovery disputes before the Court-appointed Special Masters. The parties made extensive arrangements to provide Plaintiffs' experts with access to Toyota's source code and to protect that highly confidential source code from unauthorized or inadvertent disclosure. The parties prepared and presented a technical tutorial to the Court that was attended by

---

7. Toyota's allusion to the date of the Court's decision on the choice-of-law issue that declined to apply California law to a nationwide class as a date that triggered alteration of its assumptions about the enforceability of the arbitration agreements is unconvincing. (*See* Motion at 25 & n. 7.) Undoubtedly, *Concepcion* has had some effect class action waivers in other states; however, its most profound effect—or, at least, its most clearly identifiable and immediately anticipated effect—has been on class action waivers in California, as it expressly repudiated California's *Discover Bank* rule.

8. This motions practice has led to the issuance of at least four orders affecting the substantive rights of the parties. Specifically, the Court twice considered the pleading sufficiency of a putative class of foreign plaintiffs, ultimately dismissing all claims. (Docket Nos. 1237 & 2004.) The Court considered the pleading sufficiency of claims asserted under California law by the putative class of domestic plaintiffs. (Docket No. 1414.) The Court denied Plaintiffs' Motion for Application of California Law to a nationwide class. (Docket No. 1478.)

federal and state judicial officers, as well as the Court-appointed Special Masters. The parties worked toward a joint schedule for completion of three bellwether trials during the year 2013. The Court held seventeen hearings. The parties have engaged in countless meet-and-confer meetings.

At no time did Toyota suggest that it would exercise a right to compel arbitration. By continuing to actively defend the present MDL and, more specifically, the economic loss claims, without a whisper of the intent to seek an order compelling arbitration, Toyota has engaged in numerous acts that are inconsistent with the right to compel arbitration.

The Court is not persuaded by Toyota's argument that it stayed its hand on the arbitration issue solely or primarily on the basis of Court statements and orders permitting Plaintiffs a period of time in which to evaluate the impact of the Court's choice-of-law ruling and to identify potential bellwether class action state(s) and Plaintiffs. (*See* 02/27/2012 Tr. at 19–20.) Toyota's point, as the Court understands it, is that the present MDL was not at the proper point in the proceedings to seek an order compelling arbitration. Stated slightly differently, this point appears to be based on the assumption that earlier presentation of a motion to compel arbitration would waste judicial resources in a manner expressly discouraged by the Court. As noted previously, because of the § 2 savings clause, the § 4 analysis has the potential to vary based on the underlying applicable state substantive law. Thus, Toyota's argument on this issue is not wholly lacking in appeal.

Nevertheless, the Court has no difficulty concluding that by engaging in the actions detailed in this subsection, the Toyota Defendants acted in a manner inconsistent with the right to compel arbitration.

### 3. *Resulting Prejudice to the Party Opposing Arbitration*

By failing to assert a right to compel arbitration until now, Toyota has encouraged Plaintiffs to pursue their current litigation strategy, including pursuing their claims on a class-wide basis in a federal forum. Arbitration and litigation differ so much in form and procedure that the substance of a competent advocate's everyday decisions are necessarily shaped by and based on the method of adjudication. Litigation provides greater discovery, but at a much greater cost. Arbitration provides a more speedy resolution of an individual's claim, but lacks the efficiencies occasioned by class treatment of claims. Because Plaintiffs have been permitted to continue on their present path of class-wide litigation for so long, they would be prejudiced if their claims were required to be submitted to arbitration now.

As detailed above, class counsel have expended enormous amounts of resources in providing and reviewing discovery and engaging in motions practice before the Court and the Special Masters. They have engaged the services of experts. They have sought substantial third-party discovery. In the absence of an indication of an intent to compel arbitration, they have expended thousands of attorney hours prosecuting the present litigation in its present form. These activities would not have occurred in an individual arbitration. They represent not only expenditures of money, but also expenditures of the valuable commodity of class counsel's time.

Toyota contends that the expenditure of "time, money, and effort" in engaging in motions practice and discovery does not demonstrate prejudice. (Motion at 25.) In making this argument, Toyota relies on *Fisher*, 791 F.2d at 697, which is distinguishable from the present case. In *Fish-*

er, after consideration of an intervening Supreme Court case, the court concluded that some of the plaintiff's claims were subject to arbitration, but others were not. *Id.* at 697. For that reason, the court found no prejudice resulted from the efforts expended in discovery because those materials would be relevant to the claims that were not subject to arbitration. *Id.* This situation is not present to the same degree here. Here, with millions of potential class members, an understanding that some substantial percentage of members' claims (approximately 75%–80% if the Class Representatives' arbitration provisions are representative of the class as a whole [9]) would have undoubtedly altered Plaintiffs' strategy and allocation of resources.

Additionally, the court faulted the plaintiffs for their "deliberate choice of an improper forum," calling the claimed prejudice a "self-inflicted wound." *Id.* at 698. Here, in light of the fact that the present Toyota Defendants are not parties to the agreements pursuant to which they seek to compel arbitration, and in light of the Court's ruling that these Defendants cannot compel arbitration of the present claims, the Court cannot fault Plaintiffs for filing the present litigation rather than seeking arbitration of their claims.

Thus, were the Court to compel arbitration of Plaintiffs' claims, Plaintiffs would suffer substantial prejudice as a result of the delay by Toyota in seeking arbitration.

### D. Ruling Regarding Waiver

Because the present Motion to Compel Arbitration was not filed until the last day of November 2011—nearly eleven months after the filing of the SAMCC setting forth claims based on laws other than California, and a full seven months after *Concepcion* was decided—Toyota acted in a manner inconsistent with any right to compel arbitration. The resulting prejudice to the Class Representatives leads the Court to find that Toyota waived any right to compel arbitration of the claims asserted by the fifteen Plaintiffs identified *supra* nn. 3–4. As to these Plaintiffs, the Court denies the Motion to Compel Arbitration on the basis of waiver.

\*　　\*　　\*

As to the remaining five Class Representatives, questions remain as to whether the Toyota Defendants, which are admittedly not parties to the relevant arbitration agreements, may nonetheless successfully move to compel arbitration. Because the Toyota Defendants contend that the relevant arbitration agreements delegate issues of arbitrability to the arbitrator,[10] the Court must also consider whether it or the arbitrator should decide this threshold issue.

### IV. Right of Third Party to Enforce Agreements to Arbitrate

### A. Equitable Estoppel Permits Non–Signatories to Enforce Agreements to Arbitrate

Neither Toyota Defendant signed any of the agreements containing the arbitration provisions pursuant to which they seek an order compelling Plaintiffs to arbitrate their claims. However, in certain instances, equitable estoppel and agency principles may permit non-signatories to compel arbitration. *See Comer v. Micor, Inc.,* 436

---

**9.** Toyota moved to compel arbitration as to 21 of 27 Class Representatives. The claims of one Plaintiff were dismissed in the interim. Thus, the percentage is in the range of 20/27 to 21/27 (74.1% to 77.7%). Applying that percentage to Toyota's counsel's estimate of 40 million potential class members, that reduces the size of the potential class from 40 million to 10 million.

**10.** Herein, the Court refers generally to such provisions as "delegation provisions."

F.3d 1098, 1101–02 (9th Cir.2006). Only the issue of equitable estoppel is relevant here.

■■■■■■ "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir.2009) (internal quotation marks and citation omitted). A non-signatory may compel arbitration of a signatory where "the claims [are] intertwined with the contract providing for arbitration." *Id.* at 1047 (internal quotation marks and citation omitted).

B. *Who Decides Whether Non–Signatories May Enforce Agreements to Arbitrate?*

■■■■ Toyota contends that the threshold issue of whether they may enforce the agreements to arbitrate must itself be decided by an arbitrator. The Court disagrees.

1. *General Presumption—Courts Decide Arbitrability*

Generally, the issue of whether a particular dispute is subject to arbitration is an issue decided by the courts. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir.2006). This is so because before a Court may compel arbitration, § 4 of the FAA requires the Court to satisfy itself that the making of the agreement to arbitrate is not at issue. *See* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

2. *Parties to an Agreement to Arbitrate May Narrow the Scope of the Court's Role in Deciding Issues of Arbitrability by Delegating that Role to the Arbitrator*

The Supreme Court has given consideration to what constitutes a § 2 "written provision in a . . . contract . . . to settle by arbitration a controversy." As explained below, where a contract contains provisions that go beyond the agreement to arbitrate, courts are called upon to examine the arbitration provision rather than the contract as a whole. Similarly, as also explained below, where the parties agree to delegate the issue of arbitrability to the arbitrator, the Court limits its consideration to the so-called "delegation provision" rather than the arbitration provision as a whole.

The Supreme Court differentiated a "written provision in a contract . . . to settle by arbitration a controversy" from the contract in which it appears in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). There, at issue was a claim that defendant fraudulently induced a plaintiff to enter into a contract that included an arbitration clause. *Id.* at 398, 87 S.Ct. 1801. The Court focused the inquiry on whether "the making of an agreement for arbitration" was "in issue" and, finding that it was not, compelled arbitration. *Id.* at 403–04, 87 S.Ct. 1801. It made this conclusion because the claim was not that plaintiff was fraudulently induced to enter into the agreement to arbitrate but rather that plaintiff was fraudulently induced to enter into the contract as a whole. *Id.* at 403–04, 87 S.Ct. 1801. Thus, the Court observed that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* In contrast, the Court noted that "the

statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404, 87 S.Ct. 1801.

This general principle was more recently applied in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). There, plaintiffs alleged that a usurious finance charge rendered invalid an entire contract, including the contract's arbitration clause. *Id.* at 444, 126 S.Ct. 1204. Applying *Prima Paint*, the Court compelled arbitration, reiterating that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46, 126 S.Ct. 1204.

■ The presence of a delegation provision further narrows the role of a district court presented with a motion to compel arbitration. To be given effect, such a delegation must be a "clear and unmistakable" expression of the parties' intent to submit to arbitration the issue of arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (alteration marks and citation omitted). Once that hurdle is cleared, however, when the parties' delegation of the issue of arbitrability is "clear and unmistakable," the district court's focus would ordinarily be limited to the delegation provision rather than the arbitration provision containing the delegation provision. *See Rent–A–Center, West, Inc. v. Jackson*, —— U.S. ——, 130 S.Ct. 2772, 2776–77 & n. 1, 177 L.Ed.2d 403 (2010). In so concluding, the Supreme Court reasoned that a delegation provision itself constituted § 2 "written provision . . . to settle by arbitration a controversy" that was severable from both the broader arbitration provision and the even broader contract in which the delegation provision and arbitration provisions were found. *Id.* at 2777.

■ Reading *Prima Paint* and *Rent–A–Center* together, a coherent principle emerges, consistent with the notion that arbitrability is a question of contract. In the absence of a delegation provision, the Court must examine only whether there is a valid agreement to arbitrate and, if there is, enforce the agreement to arbitrate as written, deferring to the arbitrator on the larger issues such as the validity of the contract as a whole or determination of the scope of arbitrable claims. *Prima Paint*, 388 U.S. at 404–05, 87 S.Ct. 1801. The presence of a delegation provision further narrows the Court's role. In that instance, the Court does not examine whether there is a valid agreement to arbitrate. *Rent–A–Center*, 130 S.Ct. at 2776–77. Rather, the Court must examine only whether there is a valid delegation provision and, if there is, the Court must enforce the delegation provision by compelling arbitration and reserving for the arbitrator issues that implicate the agreement to arbitrate as a whole, as well as larger issues such as the validity of the contract as a whole or determination of the scope of arbitrable claims. *Rent–A–Center*, 130 S.Ct. at 2779. As observed by the *Rent–A–Center* Court, this scheme "merely reflects the principle that arbitration is a matter of contract." *Id.* at 2776.

Certain of the agreements to arbitrate here contain delegation provisions. (*See* Dawson Decl. Exs. E (Plaintiff Goldstein), H (Plaintiff Henry, delegating issues of contract validity only) & L (Plaintiff Bennett).) It is on the basis of these delegation provisions that Toyota contends these delegation provisions require that the arbitrator decide the issue of whether Toyota may enforce the agreements to arbitrate. The Court considers this issue at length in the subsections that follow.

### 3. The Court's Role Here

Toyota's position assigns the Court too narrow a role.

#### a. The Court Must Interpret and Apply the FAA

Undoubtedly, "arbitration is a matter of contract," *Concepcion,* 131 S.Ct. at 1745, and the Court's role is limited where the parties have entered in to an agreement to arbitrate. But what limits the Court's role, and what requires principles of contract to be given control, is the statutory language of the FAA. It is the Court's role to interpret and apply the FAA. The Court cannot abdicate that role.

For instance, in *Prima Paint,* the Court looked to the claims and the contract containing the arbitration clause and compelled arbitration only after its analysis that the contract as a whole rather than the narrower agreement to arbitrate was at issue. 388 U.S. at 403–04, 87 S.Ct. 1801. In doing so, the Court considered whether the statutory requirement of § 4 was met. (*Id.* at 404, 87 S.Ct. 1801 (examining whether "the making of the agreement for arbitration ... [was] not at in issue.").) Similarly, in *Rent–A–Center,* the Court looked to the claims at issue and the contract containing the arbitration provision (and delegation provision), compelling arbitration only after concluding that the delegation provision itself—rather than the broader agreement to arbitrate—was the § 2 "written provision" to "settle by arbitration a controversy" that required enforcement. 130 S.Ct. at 2776–77.

The Ninth Circuit has articulated this duty more clearly and more forcefully. In *In re Van Dusen,* 654 F.3d 838, 840 (9th Cir.2011), the parties' arbitration agreement contained a delegation provision that required the issue of arbitrability be submitted to the arbitrator. *Id.* at 842. At issue in *Van Dusen* was whether the arbitration agreement was expressly exempted from coverage under the statutory text of § 1 of the FAA. *Id.* at 840. Although the district court accepted the argument that this issue fell into the general category of "threshold question[s] of arbitrability" that should be decided by the arbitrator in light of the delegation provision, the Ninth Circuit disagreed. *See id.* at 841–42. In doing so, the Ninth Circuit cautioned that district courts must not confuse their authority to enforce private arbitration agreements under the FAA with the provisions of those agreements:

> The question at issue here does not fit within that definition, however: whatever the contracting parties may or may not have agreed upon is a distinct inquiry from whether the FAA confers authority on the district court to compel arbitration. The Court has never indicated that parties may delegate this determination to an arbitrator in the first instance; on the contrary, it has affirmed that, when confronted with an arbitration clause, the district court must first consider whether the agreement at issue is of the kind covered by the FAA.

*Id.* at 844. Based on this reasoning, the Court noted that "private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold." *Id.* at 844.

The question here is not whether the relevant agreements are exempt entirely from the FAA. However, *Van Dusen* has applicability because it reinforces the principle that the Court must comply with the dictates of the statutory text of the FAA.[11] As discussed below, the Court concludes

---

11. Because the relief sought in *Van Dusen* was limited to mandamus relief, and because the court concluded the high standard for granting mandamus relief had not been met, the writ was denied. *Id.* at 846. Nevertheless, the Court finds the discussion in *Van*

that § 2 and § 4 require it to determine the issue of equitable estoppel presented by the present Motion to Compel Arbitration.

The Court so concludes because the fact that the Toyota Defendants are not parties to the arbitration provisions or the delegation provisions at issue fundamentally alters the relevant analysis. As the Court indicated at the hearing, if the Toyota Defendants were parties to the relevant provisions, the Court's analysis would be simple. (*See* 02/27/2012 Tr. at 4–5.) As it stands, the issue before the Court is not simply whether there is an enforceable delegation provision. Rather, precisely stated, the issue before the Court is whether Plaintiffs' claims against third parties (here, the Toyota Defendants) are sufficiently intertwined with the contract containing the arbitration provisions and delegation provisions such that equity requires that Plaintiffs be precluded from repudiating those provisions when faced with the third parties' arbitration demand. This question requires an analysis of both § 2 and § 4, either of which leads the Court to conclude that it must decide the issue of equitable estoppel.

### b. *Section 2 Issues*

Under § 2 of the FAA, there must in all instances be "a written provision ... to settle by arbitration a controversy" for a court to enforce it. 9 U.S.C. § 2. Such an agreement is "valid, irrevocable, and enforceable," unless generally applicable state-law grounds compel a contrary result. *Id.; see also Perry*, 482 U.S. at 492 n. 9, 107 S.Ct. 2520.

Here, regardless of whether one looks to California, Florida, or New York law, it is well established that as a general matter, third parties have only limited rights when it comes to enforcing contracts. Specifically, California, Florida, and New York law all limit third parties' enforcement of contracts by requiring that those third parties be express or intended beneficiaries of those contract. *See* Cal. Civ.Code § 1559 (allowing enforcement a contract "made expressly for the benefit of a third person"); *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1441 (11th Cir. 1996) (noting that Florida law permits enforcement of a contract by intended but not incidental third-party beneficiaries); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 485 N.E.2d 208, 212–13 (1985) (same). The Toyota Defendants, by advocating that they may enforce the agreements to arbitrate, essentially contend that this general rule of limited enforcement by third-party beneficiaries must be tempered by the doctrine of equitable estoppel.[12]

As a matter of application and interpretation of § 2 of the FAA, when determining whether equitable estoppel applies to entitle the Toyota Defendants to compel arbitration of Plaintiffs' claims, the Court must factor into the equation the generally applicable law of contracts that, as a general rule, third parties have limited rights to enforce those contracts. Of course, the Court must also factor into that equation how equitable estoppel may shape the application of that generally applicable rule. Consistent with *Van Dusen*, this § 2 inquiry cannot be delegated to the arbitrator.

Like the *Rent–A–Center* Court, this Court must satisfy itself that there is a § 2

---

*Dusen* helpful to the resolution of the present issue.

**12.** Toyota does not contend that a separate analysis is necessary for each state, however. Rather, Toyota concedes that in the specific context at issue here—implicating a the right of a non-signatory to compel arbitration of claims asserted by a signatory—federal law, California law, Florida law, and New York law are "functionally identical." (Reply at 6 n. 2.)

"written provision" to "settle by arbitration a controversy" that requires enforcement. In doing so, even where a given Plaintiff entered into a delegation provision, the Court does not intrude into an area delegated to the arbitrator because the question "is not whether Plaintiffs' claims fall within the scope of the Purchase Agreements, but whether the parties here are subject to the arbitration provision contained in the agreements." *In Re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products Liability Litigation*, 828 F.Supp.2d 1150, 1159 (C.D.Cal.2011) ("*Toyota Hybrid Brake Litigation* ").

Thus, the Court's § 2 inquiry requires that the Court decide the issue of equitable estoppel.

### c. *Section 4 Issues*

The provision of the FAA that authorizes the Court to compel arbitration supports this conclusion as well. Section 4 requires the Court, on the "petition" of "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," to "hear [from] the parties." 9 U.S.C. § 4. The Court "shall make an order directing the parties to "proceed to arbitration in accordance with the terms of the agreement" "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.*

In the absence of a written contractual right, whether Toyota is a § 4 "party aggrieved" correlates with a determination of whether Toyota has an equitable right to enforce the Class Representatives' agreements to arbitrate. Because the Court must interpret and apply the FAA and cannot abdicate that role, it is required to determine whether Toyota is "a party aggrieved." As presented, this necessarily requires analysis by the Court of the equitable estoppel issue. Here, the Toyota

Defendants contend they have the right, as non-signatories, to compel arbitration by application of the doctrine of equitable estoppel. If they have no right to compel arbitration under this doctrine, they are not § 4 "part[ies] aggrieved." Because "a party aggrieved" is a condition of the Court's authority to compel arbitration, it necessarily requires the Court to analyze the issue of equitable estoppel.

Thus, the Court's § 4 inquiry also requires that the Court decide the issue of equitable estoppel.

### 4. *Case Law Cited by Toyota is Unpersuasive*

Case authority cited by Toyota does not convince the Court it should abdicate any inquiry on the issue of equitable estoppel. Toyota relies upon *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 211 (2d Cir.2005), in which the Second Circuit affirmed the district court's order compelling arbitration, noting that the question of whether a non-signatory can compel a signatory to arbitration was subject to the agreement's delegation provision. *Id.* at 209.

However, in reaching this conclusion, the court first conducted a preliminary inquiry into whether there was a valid agreement to arbitrate by examining the relationship between the signatories to the contract containing the agreement to arbitrate, and their successors' continued performance under the contract. In the court's view, "[t]hese factors demonstrate a sufficient relationship existed between [the parties to the agreement to arbitrate] to compel arbitration even if … the arbitrator were to determine the dispute was not arbitrable." *Id.* This was so because *Contec* involved an issue of whether the rights under the agreement to arbitrate were assignable, and thus went to the "existence, scope or validity" of the agreement, a question which was delegated to the arbitrator. *Id.* at 210. Thus, contrary

to Toyota's portrayal, *Contec* does not support the broad proposition that in the face of a delegation provision, the Court should defer to the arbitrator entirely and make no inquiry into whether a non-signatory may pursuant to equitable estoppel enforce an agreement to arbitrate against a signatory.

Moreover, tracing backwards through the authority upon which *Contec* relies, it becomes evident that *Contec* actually considered whether equitable estoppel applied under what has been referred to by the Second Circuit as an "alternative estoppel theory requiring arbitration between a signatory and nonsignatory." *Choctaw Gen. Ltd. P'ship v. Am. Home Assurance Co.,* 271 F.3d 403, 406 (2d Cir.2001) (setting forth factors quoted in *Contec,* 398 F.3d at 209). Specifically, the *Contec* court discussed an argument that a party "cannot be compelled to arbitrate with a stranger to the [relevant a]greement." *Id.* at 209. The *Contec* court acknowledged that a signatory cannot in all instances be compelled to arbitrate with a non-signatory and that "a court must first determine whether the parties have a sufficient relationship with each other and the to the rights created under the agreement." *Id.* (citing *First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920.)

The court next noted that "[a] useful benchmark for relational sufficiency could be found in *Choctaw,*" in which the Second Circuit "held that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* (internal quotation marks and citations omitted). In *Choctaw,* the Court set forth the factors that it quoted in *Contec:* " 'the relationship among the parties, the contracts they signed (or did not), and the issues that have arisen.' " *Contec,* 398 F.3d at 209 (quoting *Choctaw,* 271 F.3d at 406).

Notably, immediately after quoting these factors, the Second Circuit set forth the quotation upon which the Toyota Defendants rely:

> In the present case, neither we nor the district court must reach the question whether [the signatory] is estopped from avoiding arbitration with [the non-signatory] Corporation because, under the 1999 Agreement, the circumstances indicate that arbitration of the issue of arbitrability is appropriate.

*Contec,* 398 F.3d at 209. To be sure, with this quote, the *Contec* court purports to allocate the issue the arbitrability—and more specifically, the issue of equitable estoppel—to the arbitrator. *Id.* However, in the discussion immediately following the portion quoted above, the *Contec* court nevertheless clearly applies all the equitable estoppel factors set forth in *Choctaw:*

> First, there is or was an undisputed relationship between each corporate form of Contec and Remote Solution. Secondly, Remote Solution signed the 1999 Agreement. Finally, the dispute at issue arose because the parties apparently continued to conduct themselves as subject to the 1999 Agreement regardless of change in corporate form. These factors demonstrate that a sufficient relationship existed between Contec Corporation and Remote Solution to permit Contec Corporation to compel arbitration even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because Contec Corporation cannot claim rights under the 1999 Agreement.

*Contec,* 398 F.3d at 209. Thus, while purporting to allocate the issue of equitable estoppel to the arbitrator, the *Contec* court actually applied factors meant to determine it. For that reason, *Contec* provides no persuasive value here.

Another very recent case upon which Toyota relies is *Laguna v. Coverall N. Am., Inc.*, No. 3:09–cv–2131, 2011 WL 3176469, at *7 (S.D.Cal. July 26, 2011). This decision is of no persuasive value. It does not consider a motion to compel arbitration; rather, it merely resolves certain outstanding discovery matters related to the issue of arbitration. *See id.* Moreover, it merely cites *Contec* without additional discussion or analysis.

Similarly, the Court finds that the citation of *Washington v. William Morris Endeavor Entertainment, LLC*, No. 2:10–cv–9647, 2011 WL 3251504, at *8 (S.D.N.Y. July 20, 2011), does not advance Toyota's position. This case cites *Contec* for its basic proposition; however, as in *Contec*, the *Washington* court nevertheless conducted an inquiry into the relationship among the parties. Specifically, the court considered whether individual defendants who were sued by a former employee could compel arbitration pursuant to an agreement to arbitrate between the former employee and the individual defendants' employer. *Id.* Although noting that the court need not reach the issue of estoppel because of the delegation provision, the court also concluded that the individual defendants could enforce the terms of the agreement to arbitrate. *Id.* In doing so, the court looked to the scope of the disputes that the former employee agreed to arbitrate, which required arbitration against the "Company," which was, in turn, defined to include the Company's employees. Thus, like *Contec*, *Washington* lacks persuasive value on this issue.

The Court is similarly unpersuaded by a case to which the Toyota Defendants belatedly cite, *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir.1989).[13] Like *Contec*, the *Apollo* court determined the issue of arbitrability should be submitted to the arbitrator pursuant to a delegation provision. *Id.* at 473–74. But it did so only after noting that the parties seeking to compel arbitration claimed that the right to compel arbitration had been assigned to them. *Id.* at 473. As such, the court conducted a preliminary inquiry similar to that in *Contec* based on the relationship between the parties to the relevant agreement. *Apollo* is of little persuasive value as well.

### 5. Conclusion Regarding Who Decides Whether Non–Signatories May Enforce Agreements to Arbitrate

Because it implicates both whether there is a § 2 "written agreement" to "settle by arbitration a controversy" not contravened by generally applicable state law and whether Toyota is a § 4 "party aggrieved" by the refusal to arbitrate, the threshold question of whether non-signatory Toyota may compel the arbitration of the Class Representatives' claims is properly before the Court. *Accord In Re Toyota Motor Corp.*, 828 F.Supp.2d at 1159 n. 5.

\* \* \*

As noted previously, there are five Class Representatives as to whom Toyota has not waived the right to compel arbitration. The Court discusses the application of equitable estoppel in the sections that follow.

### V. Agreements to Arbitrate[14]

One of the remaining Class Representatives asserts claims under New York law;

---

**13.** *Apollo* was not cited in the Motion or the Reply. *Contec*, first cited in the Reply, bolsters its own conclusion regarding equitable estoppel by citing to *Apollo*. But other than that, the first reference to *Apollo* is found in the spiral-bound demonstratives that were provided to the Court at the hearing. Plain-

tiffs expressly responded to Toyota's reliance on *Apollo* in their Response to Toyota's New Authority and Demonstratives (Docket No. 2280) at 1–3.

**14.** The arbitration provisions are found in agreements with vehicle dealerships. For

the other four assert claims under Florida law.

## A. *New York Class Representative*

Charmayne Bennett entered into a "Retail Installment Contract" on May 31, 2008, which dealt with financing and which was assigned by the dealer, Advantage Toyota Scion, to Toyota Motor Credit Corporation ("TMCC"). (Dawson Decl. (Docket No. 2006), Ex. L at 1–3.) The agreement expressly disclaims express warranties and implied warranties of merchantability or fitness for a particular purpose. (*Id.* at 2.) It does not contain any agreement to arbitrate.

Bennett also entered into a "Pre–Owned Vehicle Purchase Agreement" on the same date. (*Id.* at 4.) The agreement also expressly disclaims express warranties and implied warranties of merchantability or fitness for a particular purpose. (*Id.* at 5.) There is also a separate agreement to arbitrate, ostensibly between Bennett and the dealership, which Bennett signed but which no other party signed.[15] (*Id.* at 6.) The agreement is a broadly worded provision with a delegation provision:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, *which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship* (including any such relationship with third parties who do not sign your

purchase or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Agreement shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.
> (*Id.* (emphasis added).)

Bennett's agreements deal generally with the details of financing and taking delivery of a pre-owned Toyota Camry. The agreements set forth purchase prices, fees, taxes, and other charges, as well as finance terms.

## B. *Florida Class Representatives*
### 1. *Carol Danziger*

Carol Danziger entered into a "Proposal," and a "Motor Vehicle Lease Agreement," with Del Ray Toyota/Scion on October 31, 2008. (Dawson Decl., Ex. C. at 1 & 3.) Notably, these agreements thrice disclaim express warranties and implied warranties of merchantability or fitness for a particular purpose. (*Id.* at 1–3.)

The latter agreement contains an agreement to arbitrate, but not a delegation provision. (*Id.* at 4.) Subject to exceptions not relevant here, the agreement to arbitrate provides:

> [I]f any dispute, controversy or claim, involving you and us, or any of our respective employees, agents, affiliates, successors or assigns, arises out of or relates to your credit application, this Contract, the breach of this Contract, or any resulting transaction or relationship (including any such relationship with

---

convenience, the Court refers to these agreements as "customer agreements."

**15.** Because the parties did not address it, the Court does not determine whether the absence of a signature on behalf of the dealership negates the agreement to arbitrate.

third parties who do not sign this Contract), each a "Dispute", you and we agree that such Dispute shall, at your or our election, be resolved by binding arbitration and not by a court action. Each Dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You and we expressly waive any right that either of us may have to arbitrate a class action.

(*Id.*)

Danziger's agreements deal with services provided to her by the dealer, delivery of her leased Toyota Camry, and various terms of the lease of the vehicle (including insurance requirements, rights upon default, and the ending of the lease). The agreements set forth lease payments, fees, taxes, and other charges.

### 2. *Ziva Goldstein*

Ziva Goldstein also entered into a "Motor Vehicle Lease Agreement" with a dealer, Triangle Auto Center, Inc., on January 8, 2010. (Dawson Decl., Ex. E.) With the exception of the addition of a delegation provision in the arbitration agreement, Goldstein's agreements differ in no relevant way from Danziger's agreements. There is an express waiver of any express or implied warranties. The agreement sets forth the same or similar terms of the vehicle lease. From the form number on the documents, it appears that Goldstein's "Motor Vehicle Lease Agreement" is simply an updated version of Danziger's agreement.

### 3. *Charles Henry*

Charles Henry entered into a "Retail Order Contract" and "Retail Installment Sale Contract" on February 6, 2007, with Central Florida Toyota. (Dawson Decl. Ex. H.) Each contract has an arbitration provision, but these provisions are not identical. Toyota moves to compel on the basis of the "Retail Order Contract" only.

(*See* Dawson Decl. Ex. A at 2 n. 2.) The Retail Order Contract expressly disclaims express warranties and implied warranties of merchantability or fitness for a particular purpose. (Ex. H.) The arbitration provision broadly worded and includes a delegation provision:

> The parties to the agreement agree to arbitrate any claim, dispute or controversy, including all statutory claims and any state or federal claims, that may arise out of or are related to the purchase or lease of the automobile identified in this Motor Vehicle Retail Order and the financing thereof, including the validity of this agreement.... By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes.

(*Id.*) The agreement expressly excepts from arbitration claims made under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301, *et seq.* ("MMA").

Henry's Retail Order Contract deals generally with the details of taking delivery of a pre-owned Toyota Camry. The Retail Order Contract sets forth purchase prices, fees, taxes, and other charges.

### 4. *Linda Savoy*

Portions of Linda Savoy's agreements are illegible. (*See* Dawson Decl., Ex. G.) Savoy purchased her vehicle from the same dealer as did Danziger. From a comparison of the second page of each exhibit, it appears that Savoy's agreement has the same express waiver of express and implied warranty as does Danziger. (*Compare* Ex. G ¶ 17 with Ex. C ¶ 17.) Toyota represents, and on the present record the Court is ill equipped to disprove,[16] that the arbitration agreement is identical

---

**16.** The Court notes, however, the presence of

an abbreviated agreement to arbitrate in the

to Danziger's arbitration agreement. (*Compare* Dawson Decl. Ex. A at 1 *with id.* at 2.)

Savoy's agreements deal with services provided to her by the dealer, and delivery of her purchased Toyota Camry, and financing terms.

## VI. *Equitable Estoppel Does Not Require Arbitration*

In addition to the Second Amended Economic Loss Master Consolidated Complaint (hereinafter referred to as the "SAMCC") (Docket No. 580), relevant factual allegations are found in a pleading referred to by the parties (and now the Court) as the *Danziger* Complaint (*see Carol Danziger, et al. v. Toyota Motor Corporation, et al.,* 2:11–CV–07778 JVS (FMO), Docket No. 10) and the *Gudmundson* Complaint (*Thomas E. Gudmundson v. Toyota Motor Sales, U.S.A.,* Inc., 2:10–CV–02021 JVS (FMO), Docket No. 1).

The Plaintiffs assert the following claims based on Florida law and federal law: (1) Violation of Florida's Unfair & Deceptive Trade Practices Act (Fla. Stat. §§ 501.201, et seq.); (2) Breach of Express Warranty (Fla.Stat. § 672.313); (3) Breach of the Implied Warranty of Merchantability (Fla. Stat. § 672.314); (4) Revocation of Acceptance (Fla.Stat. § 672.608); (5) Breach of Contract/Common Law Warranty; (6) Fraud by Concealment; (7) Unjust En-

richment; and (8) Violation of the MMA. (*See* SAMCC at 325–36; *Danziger* Compl.[17] at 199–207.)

Plaintiffs also assert the following claims based on New York law: (1) Deceptive Acts or Practices (N.Y. Gen. Bus. Law § 349); (2) False Advertising (N.Y. Gen. Bus. Law § 350); (3) Breach of Express Warranty (N.Y.U.C.C. § 2–313); (4) Breach of Implied Warranty of Merchantability (N.Y.U.C.C. § 2–314); (5) Revocation of Acceptance (N.Y.U.C.C. § 2–608); (6) Breach of Contract/Common Law Warranty; (7) Unjust Enrichment; and (8) Violation of the MMA, 15 U.S.C. §§ 2301 *et seq.* (*See* SAMCC at 554–64; *Danziger* Compl.[18] at 207–16.)

Since the filing of some of the relevant pleadings, Plaintiffs have opted not to pursue their claims of revocation and unjust enrichment. (*See* Dawson Decl. Ex. D.) Taken collectively, Plaintiffs' abandonment of the revocation and unjust enrichment theories and the warranty disclaimers in the customer agreements narrow the scope of the potentially arbitrable claims. What is left are statutory consumer protection claims, fraud claims, and breach of the manufacturer's express warranty.

■ In examining Plaintiffs' claims, two reasons emerge for concluding that the remaining claims are unrelated to the customer agreements containing the arbitration provisions.[19] The first applies pri-

---

"Buyer's Order" agreement in addition to the more expansive version found in the "Retail Installment Contract." The former conflicts with the latter in the forum selected for arbitration. The former designates the American Arbitration Association ("AAA") as the forum; the latter confers the choice on the buyer of either the AAA or the National Arbitration Forum. These differences do not alter the Court's analysis in this instance.

**17.** The *Danziger* Complaint eliminates the causes of action for revocation of acceptance and unjust enrichment under Florida law. Relatedly, the cause of action for violation of

the MMA on behalf of the Florida Plaintiffs is not asserted in the SAMCC, but it is asserted in the *Danziger* Complaint.

**18.** The *Danziger* Complaint also eliminates the cause of action for revocation of acceptance and unjust enrichment under New York law. Relatedly, the cause of action for violation of the MMA on behalf of the New York Plaintiffs is not asserted in the SAMCC, but it is asserted in the *Danziger* Complaint.

**19.** The Court pauses here to note that its application of equitable estoppel does not differ based on whether there is a delegation

marily to Plaintiffs' warranty claims, and the second applies primarily to Plaintiffs' fraud and state consumer protection statutory claims.

In determining whether to apply equitable estoppel and compel arbitration of Plaintiffs' claims, the Court looks to the relatedness of the claims to the agreement containing the arbitration provision. In conducting this inquiry, the Court must keep in mind that this is an equitable test—one designed to ensure fairness by forcing a party who reaps the benefits of an agreement to accept the agreement's accompanying burdens. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir.2000) (adopting "intertwined claims" test and noting that "[t]he lynchpin for equitable estoppel is equity—fairness").

### A. *The Manufacturer's Warranty Claims Are Unrelated*

Equitable estoppel does not require arbitration of Plaintiffs' warranty claims because the customer agreements with the arbitration provisions are not related to the performance of the vehicle.[20] Instead, those agreements relate to details associated with taking delivery of a vehicle.

At the outset, the Court must note that with regard to claims falling within the scope of the express written warranty made by Toyota as the manufacturer of the leased or purchased vehicles, those claims are subject to an entirely separate, and non-binding, agreement to arbitrate. (*See* Berman Decl. Ex. 1 at 1–5 (Owner's Warranty Rights Notification booklet setting forth dispute resolution procedure that is binding on Toyota but not consumer), 18 (incorporating procedure into notice to Florida consumers) & 37–38 (incorporating procedure into notice to New York consumers); *see also* Gilford Decl. (Docket No. 330) ¶ 3 (representing Ex. B as "exemplary of Plaintiffs' warranties"); id. Ex. B at 21 (2010 Camry Warranty incorporating Owner's Warranty Rights Notification booklet into manufacturer warranty).) This observation certainly applies to Plaintiffs' claim designated as a "breach of contract/common law warranty" which is premised on Toyota's separate manufacturer's warranties rather than the purchase agreements with the dealers. (*See* SAMCC ¶¶ 930–32 & 2179–81.) As such, the Court may not compel arbitration of these claims. In addition to the reasons with more general applicability set forth below, it would simply be inequitable to compel a party to settle a dispute by bind-

provision. The Court does not so conclude based on a lack of appreciation for the case law regarding such delegation provisions. Rather, the Court so concludes because the analytical layer added when third parties attempt to enforce those "written provisions" necessarily introduces the overarching issue of the application of the doctrine of equitable estoppel. The Toyota Defendants' attempt to overcome the generally applicable limitations of third parties is the same regardless of whether the "written provision" is the *Prima Paint* arbitration provision or the narrower *Rent–A–Center* delegation provision and further, regardless of whether the delegation provision expressly references third parties.

 Unless and until a district court is satisfied that a third party, through the application of

equitable estoppel or some other legal principle, has overcome the generally applicable state-law limitations on third-party rights regarding contract enforceability, it simply may not compel arbitration consistent with § 2 or § 4. To conclude otherwise would ignore *Van Dusen's* instruction that "private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold." *Van Dusen*, 654 F.3d at 844.

**20.** This category includes Plaintiffs' MMA claims because a party's substantive rights under the MMA are derived from state-law warranty claims. (*See* Docket No. 510 at 75).

ing arbitration where he or she agreed to settle those disputes by non-binding arbitration.

More pointedly, as Plaintiffs contend in their Notice of Recent Authority (Docket No. 2251) and elsewhere (*see, e.g.,* 02/27/2012 Tr. at 23–25), the presence of the non-binding dispute resolution procedures in the warranty booklets provided to Plaintiffs detracts from the clarity of the delegation provisions. If the customer agreements are interpreted in the manner suggested by the Toyota Defendants—that the arbitrability of claims against the Toyota Defendants must be arbitrated—the conflicting arbitration provisions are fundamentally irreconcilable. Specifically, as part of the same transaction, the customer agreements delegate to an arbitrator the determination of the issue of whether a claim must be submitted to binding arbitration, but the warranty booklets set forth a conflicting procedure that instead allows the customer to invoke a dispute resolution procedure that is binding on Toyota but not on the customer.

The issue of whether arbitrability must be arbitrated is determined by reference to "ordinary state-law principles that govern the formation of contracts," and more specifically, the parties' objective "intent to submit the arbitrability issue to arbitration." *First Options,* 514 U.S. at 944, 115 S.Ct. 1920 (citations omitted). For delegation provisions to be given effect, the objective intent to delegate the issue of arbitrability to an arbitrator must be "clear and unmistakable." *Id.* (citation omitted).[21]

Here, even if the Court could, by construing in isolation the language of the customer agreements, conclude that the parties "clear[ly] and unmistakeabl[y]" intended the delegation provisions to require the issue of arbitrability to be submitted to the arbitrator, the presence of the non-binding arbitration provision in the warranty booklets necessarily alters that conclusion. In light of the conflicting arbitration provisions, the parties' intent is not clear, and does not surmount the hurdle set by *First Options.* To the contrary, read together, the conflicting arbitration provisions are not only ambiguous, they are fundamentally incompatible.

The agreements at issue here concern themselves with the mundane details of purchasing or leasing a new or used motor vehicle. Provisions are made for delivery, insurance, financing, fees, and vehicle registration. Any warranties, express or implied, are explicitly disclaimed, and in some instances are disclaimed more than once. The customer agreements are utterly devoid of any guarantees of or representations regarding the performance, operation, or maintenance of the vehicles. As such, these agreements are unrelated to Plaintiffs' claims for breach of warranty. Although not warranting a particular condition of the vehicle, these agreements make a fundamental assumption that the vehicle to be delivered to a consumer is in working order. Should that not be the case, these agreements have no provision regarding repair or replacement; those warranties are found in separate agreements, and Toyota does not seek to compel arbitration pursuant those separate agreements.

Toyota relies on cases with similar facts, in which vehicle manufacturers successfully compelled arbitration of claims based on arbitration provisions found in the plain-

---

**21.** This higher standard applies because the parties entering a contract are unlikely to focus on the question of who might decide questions regarding arbitrability, and the default expectation is that a court would decide those issues. *See First Options,* 514 U.S. at 943–945, 115 S.Ct. 1920; *see also Ajamian v. CantorCO2e, L.P.,* 203 Cal.App.4th 771, 137 Cal.Rptr.3d 773, 783–84 (2012).

tiffs' purchase agreements with dealers. However, to the extent that the courts in *Lau v. Mercedes–Benz USA, LLC,* No. CV 1101940 MEJ, 2012 WL 370557 (N.D.Cal. Jan. 31, 2012), and *Agnew v. Honda Motor Co., Ltd.,* No. 1:08–CV–01433–DFH–TAB, 2009 WL 1813783 (S.D.Ind. May 20, 2009), reached different conclusions than does the Court today, the Court disagrees with the rationale of those cases.

In *Lau,* the court compelled arbitration of a signatory's claim for breach of express warranty against a vehicle manufacturer based on its purchase agreement with the dealer. *Lau,* 2012 WL 370557, at *3–4. There, the court reasoned that absent the purchase agreement with the dealer, there would be no vehicle purchase, and absent that purchase, there would be no manufacturer's warranty. *Id.* at *4. Thus, in the court's estimation, the "breach of express warranty claim [was] tethered to" the agreement containing the arbitration provision and that it was "intimately founded in and intertwined with the underlying purchase agreement." *Id.* (internal quotation marks omitted).

Similarly, in *Agnew,* a non-signatory vehicle manufacturer sought to compel arbitration of warranty claims asserted by a signatory to a purchase agreement (containing an arbitration provision) with a dealer. *Agnew,* 2009 WL 1813783 at *4. The court applied equitable estoppel and compelled arbitration, reasoning that the plaintiff's warranty claims against the manufacturer "necessarily assume that the warranties were provided as part of [the dealer's] sale to [the plaintiff]." *Id.*

Undoubtedly, there is a "but for" connection between the execution of the purchase agreement and the acquisition of the vehicle, and a similar "but for" connection between the acquisition of the vehicle and the applicability of the manufacturer's warranty. Nevertheless, the inquiry here does not depend on "but for" causation and is instead more nuanced. *Lau* itself explains a more complex inquiry:

> A non-signatory defendant may invoke its right to compel a signatory plaintiff to arbitrate when *the claims against the non-signatory are intimately founded in and intertwined with the underlying contract obligations.* In essence, the focus is placed on the claims asserted by the plaintiff, such that if a signatory plaintiff relies on contractual terms in its cause of action against a non-signatory defendant, the plaintiff is equitably estopped from repudiating the arbitration clause within the agreement.

*Lau,* 2012 WL 370557 at *4 (internal quotation marks and citation omitted) (emphasis added). A mere "but for" test does not supply the "intimately … intertwined" relationship upon which equitable estoppel is dependent.

Here, the customer agreements containing the arbitration provision disclaim express and implied warranties. Thus, in asserting the warranty claims, Plaintiffs are not seeking to avail themselves of any advantage of the purchase agreement. At most, the breach of warranty claims bear a mere tangential or nominal relation to the underlying contractual obligations. The arbitration provisions are not implicated by the breach of warranty claims. There is no basis to compel the Plaintiffs to arbitrate on the basis of equitable estoppel.

**B.** *The Fraud and Consumer Statutory Claims Are Unrelated*

 Toyota would seek to extend the customer agreements containing the arbitration provisions to compel arbitration of Plaintiffs' fraud and state consumer protection statutory claims.[22] However,

---

**22.** Specifically, this category includes the Florida Unfair & Deceptive Trade Practices

Act claim, fraud by concealment under Florida law, the New York Deceptive Acts or Prac-

Plaintiffs do not premise these claims on the terms of those agreements or the obligations conferred on the parties thereby. Rather, these claims differ greatly in substance from the issues implicated by the purchase and lease agreements. Plaintiffs' claims are grounded on Toyota's action at a level more fundamental than its mere role as the manufacturer of consumer products that Plaintiffs purchased. Fundamentally, with the fraud claim and the statute consumer protection statutory claims, Plaintiffs allege knowledge of a safety defect—and deliberate cover-up of that safety defect—at the Toyota Defendants' highest corporate levels.

In this manner, the claims at issue here are indistinguishable from those asserted in the *Toyota Hybrid Brake Litigation,* and the court's observations in denying a motion to compel arbitration under similar facts apply equally here:

> Plaintiffs do not seek to enforce or challenge these terms in the Purchase Agreements or any duty owed by the Toyota dealerships. *The operative document at issue is not the Purchase Agreements, but Toyota's marketing materials containing the purported false representations regarding the safety of its [vehicles].* Simply put, Plaintiffs' claims do not rely on the content of the Purchase Agreements for their success.

*Toyota Hybrid Brake Litigation,* 828 F.Supp.2d at 1161 (emphasis added). The same is true here. (*See, e.g.,* SAMCC ¶¶ 138–164.) Here, as in the *Toyota Hybrid Brake Litigation,* the Plaintiffs' claims are founded upon allegations that Toyota vehicles are unsafe in that they have a tendency to suddenly and uncontrollably accelerate, that this has resulted in numerous vehicle collisions and an unreasonable safety risk, that Toyota knew about this defect but failed to disclose it to

consumers, that Toyota instead made false statements regarding the safety of their vehicles (including statements in their marketing materials), and that Toyota took affirmative steps to conceal the defect and prevent Plaintiffs from discovering it. (*Toyota Hybrid Brake Litigation,* 828 F.Supp.2d at 1161; *compare* SAMCC *passim.*)

The only possible connection between these claims and the customer agreements is that they set forth Plaintiffs' purchase price for the vehicles. Such information would likely be required to make a principled calculation of damages as to a particular Plaintiff's claims, especially in light of Plaintiffs' assertion of benefit-of-the-bargain type damages. (*See* SAMCC ¶ 70.) However, for purposes of equitable estoppel, this connection is tenuous at best. Plaintiffs have not sued the parties to the customer agreements, they do not allege the customer agreements impose any duties on the parties they have sued, and their claims are independently viable in that they do not rely on the terms of the customer agreements to support them. It is simply not the case that Plaintiffs on the one hand rely on the terms of their agreements to assert their claims, but on the other hand seek to avoid enforcement of the arbitration provisions of those agreements. Equitable estoppel is not applicable here.

Thus, as is the case with the breach of warranty claims, the arbitration provisions are not implicated by the fraud and state consumer protection statutory claims. For this reason, there is no basis to compel the Plaintiffs to arbitrate on the basis of estoppel.

### C. *Ruling as to Equitable Estoppel*

Thus, the Court determines that equitable estoppel does not require arbitration of any of the Class Representatives' claims.[23]

---

tices Claim, and the New York False Advertising claim.

**23.** To the extent that the relevant customer agreements are similar to those examined

## VII. *Conclusion*

As set forth above, the Court determines that Toyota waived its right to compel arbitration as to most of the Class Representatives' claims. As to the remaining Class Representatives, Toyota may not compel arbitration of their claims because it is not a party to the agreements containing the relevant arbitration provisions. The Court denies the Motion to Compel Arbitration.

**IT IS SO ORDERED.**

here, the Court's ruling regarding equitable estoppel has general applicability. That is, where Toyota is not a party to the customer agreement, where the customer agreement disclaims any warranty by the dealer, and where the customer agreement merely sets forth the routine details associated with purchasing or leasing a new or used vehicle, equitable estoppel does not require arbitration of any claims similar to those asserted here. This observation includes claims asserted by the Plaintiffs as to whom the Court finds waiver herein, as well as the claims asserted by other Plaintiffs under California law.